ROTH, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

*December 15, 1924—January 13, 1925.*

*Railroads: Traveler approaching grade crossing: Degree of care
required: Duty to look and listen: To stop: Contributory neg-
ligence.*

1. The presence of a railroad track is always a signal of danger,
   and the degree of care which a traveler is required to exer-
   cise in approaching a railroad crossing must at all times be
   commensurate with such danger.   The driver of an auto-
   mobile must use not only his sense of hearing but his sense
   of vision, and if necessary in order to properly exercise the
   latter, he must slow up his speed or stop his machine.   p. 584.
2. In this case, which is to recover for injuries to person and
   to property sustained when plaintiff, proceeding along a
   private driveway, attempted to cross the tracks of the defend-
   ant railroad and was struck by an engine, it is *held* that plaint-
   iff, in crossing the tracks without looking at a time when his
   view became unobstructed and without stopping, if it was
   necessary to properly exercise his vision, was guilty of negli-
   gence proximately contributing to his injury, and that such
   negligence amounted to more than a slight want of ordinary
   care.   p. 585.
      CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The action is one for personal injury and for damage to
an automobile.   Williamson street runs in an easterly and
westerly direction in the city of Madison.   The Struck &
Irwin Fuel Company yard is located north of Williamson
street and about midway between Livingston and Paterson
streets.   Through the yard of the fuel company, and run-
ning in a generally easterly and westerly direction, is a spur
track of the defendant, which connects with its main line
several blocks to the east of the fuel company's yard.   This
yard is located in part north of the spur track and partly
south thereof.   Extending north from Williamson street,

and over and across the spur track to the fuel company's yard north of such track to coal sheds belonging to the fuel company, is a private driveway used by the agents and employees of the fuel company and its customers. The south rail of this spur track is about 145 feet north of Williamson street, and a person on entering this driveway first passes through a covered scale shed thirty-five feet in length. On either side of the driveway and along the right of way of the defendant company, and within six and one-half feet of the south or near rail of said spur track, are located sheds which obstruct the view of a traveler, passing north on this driveway, of approaching trains either from the east or from the west. As the traveler proceeds northward on the driveway after leaving the scale shed, there is located to the left of the driveway a dwelling house and three barns, which also obstruct the traveler's view to the west so as to prevent him from seeing trains moving easterly on said spur track. The driveway itself is a little over sixteen feet in width. Approaching the right of way of the defendant from the south, and substantially on the southerly line of the right of way, is a sliding gate across the driveway, which gate is ordinarily kept closed by the employees of the fuel company at such periods when engines or cars are propelled across this right of way.

On the 10th day of February, 1923, at about 1:05 o'clock p. m. of that day, the plaintiff entered this driveway with a Ford automobile truck, with its top up and its curtains down. The distance from the front wheel to the wind-shield is four feet and two inches, and the distance between the wind-shield and the back rest of the seat is about two feet and eleven inches. The steering wheel is about one foot and four inches from the back rest. While driving at the rate of about eight miles per hour as he left Williamson street, the plaintiff reduced the speed of his machine so that after he left the scale shed he drove at a speed of about five

miles an hour, and continued substantially at this rate of speed until the happening of the accident herein referred to. Four or five days prior to the happening of the accident he crossed the track with one of the officers of the fuel company and visited the sheds located north of the track. At the time of such visit he claims to have paid little attention to this track or to the railroad yards because he was ardently engaged at that time in conversation with one of the officers of the fuel company.

On the day of the accident, from the time that he entered the driveway, he looked and listened attentively to ascertain whether a train was approaching. The gate was open. As he approached the track, and at the first opportunity where a view was afforded him, he looked to the right to determine whether a train was approaching from that direction, and seeing none he turned to the left, at which time his front wheels were about to cross the nearest rail of the track, and he then observed for the first time the engine of the defendant, to which was attached a gondola car, a distance of about twelve feet away, approaching him from the west at a rate of speed variously estimated at between fifteen and twenty miles per hour. The engine struck the truck at about its center, and traveled a distance of between seventy-five and one hundred feet before it was brought to a stop. The truck was demolished, and plaintiff sustained very severe personal injuries.

The case was submitted to the jury on a special verdict, and the jury found negligence on defendant's part with respect to speed, failure to give a signal by ringing of the bell, and failure to sound the whistle. The jury also found that as the plaintiff approached the point of collision he did not fail, even to a slight degree, to exercise such care as the great mass of mankind ordinarily exercise while acting under the same or similar circumstances. Upon the usual motions after verdict the court ordered judgment for plaintiff, from which judgment this appeal is taken.

· For the appellant there were briefs by *Henry J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and *Sanborn, Blake & Aberg* of Madison, and oral argument by *Mr. Killilea* and *Mr. W. J. P. Aberg.*

For the respondent there was a brief by *Riley & Ohm* of Madison, and oral argument by *Miles C. Riley* and *Howard F. Ohm.*

DOERFLER, J.  Defendant's counsel first argue that the testimony clearly shows that their client was not guilty of any negligence, and that the jury's answers to the questions of the special verdict in that behalf are not supported by any credible evidence.  We have carefully reviewed the evidence appearing in the record and are satisfied that there is sufficient credible evidence in the case to sustain the jury's findings of negligence both as to speed and failure to ring the bell.  No useful purpose, therefore, could be served by a review of the evidence, and we will therefore refrain therefrom.

The vital question with which we are concerned involves a consideration of whether or not, as a matter of law, it should be held by this court that the plaintiff was guilty of negligence which proximately contributed to his injuries. That this is a close question is conceded by the learned trial judge in his opinion.  It conclusively appears that the plaintiff was aware of the existence of the spur track.  He had crossed it several days previous to the accident.  He was fully aware of the danger which might confront him from the time that he left Williamson street with his truck and entered the private driveway.  In passing along this driveway he apprehended fully that a train might approach from either the east or the west.  He carefully listened but heard nothing.  He carefully looked for over a distance of 100 feet, but could see nothing, by reason of the obstructions preventing a view.  The sheds on both sides of the driveway along the right of way were clearly within his vision.

In approaching the track he could not help but realize the dangerous situation before him, for his view was fully obstructed both to the right and to the left. The presence of a railroad track is always a signal of danger, and the degree of care which a traveler under such circumstances is required to exercise must at all times be commensurate with such danger. When he looked to the right he was at a point where he was about to enter the danger zone. During the time consumed in exercising this precaution the front wheels of his truck had proceeded to a point where they were ready to cross the nearest rail. Turning to the left he saw the train approaching at a distance of about twelve feet. He was then in a dilemma from which it was extremely difficult to extricate himself. There is no question but that at that time he exercised due precaution. However, it has been repeatedly held by this court that before entering the zone of danger at a railroad crossing a traveler must resort not only to his sense of hearing but also to his sense of vision. Clearly, the various views taken by him before he came in close proximity to the defendant's right of way were absolutely futile on account of the existing obstructions. It then became incumbent upon him to exercise properly his sense of vision at a time where the same would be available to him in such a way as to protect him from injury. In such a situation it becomes necessary, in order that his vision may be properly exercised, to slow up his speed or to stop his machine. That is the care which the law imposes upon him. He cannot blindly proceed on a railroad track, where trains may be operated at any time, without having complied with these essential and necessary precautions. Looking toward the west at a time when the vehicle had already proceeded into the danger zone amounts to an exercise of no precaution whatever. True, the evidence establishes that plaintiff exercised fully his sense of hearing. But, as has been repeatedly held by this court, the exercise of that sense is not always reliable, owing to weather conditions.

From the evidence in this case we are forced to the inevitable conclusion that the plaintiff was guilty of negligence which proximately contributed to his injury and to produce the damage, and that such negligence, even though sec. 192.27, Stats., were applicable herein, would amount to more than a slight want of ordinary care.   The view thus expressed is fully sustained by the following cases: *Nolan v. M., L. S. & W. R. Co.* 91 Wis. 16, 64 N. W. 319; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295; *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *Twist v. M., St. P. & S. S. M. R. Co.* 178 Wis. 513, 190 N. W. 449; *Plautz v. C., M. & St. P. R. Co.* 180 Wis. 126, 192 N. W. 381; *Sweeo v. C. & N. W. R. Co.* 183 Wis. 234, 197 N. W. 805.

*By the Court.*—Judgment reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.

CROWNHART, J. (*dissenting*).   The facts of this case are fully and fairly stated by the court, but I cannot agree in the conclusions drawn therefrom.   To say that plaintiff "blindly proceeded on the railroad track," or that he exercised "no precaution whatever," seems to me to quite ignore the facts.   The situation was exceptional.   The plaintiff drove his auto along the walled-in, narrow alley very slowly and cautiously, listening attentively, and looking to the full extent of his vision.   The railroad track was within six and one-half feet of the building line, and the auto front wheels would be within the line of the overhang of the tender before plaintiff could see up and down the track.   Here was a dangerous situation on the property of the defendant, which it had leased to be used as a coal yard with this identical roadway, and the crossing prepared and maintained by it for use by the lessee and its customers.   The narrow alley, inclosed by buildings up to six and one-half feet of the track, made a dangerous trap for travelers thereon, unless

defendant should use extra precaution in operating its trains over the driveway.   Under the circumstances plaintiff had every reason to expect the cars would move slowly over the crossing and that timely warning would be given by ringing the bell of the engine.   The defendant did neither.   On the contrary, it ran its cars at an unlawful rate of speed and failed to ring the bell or give any other warning.   The plaintiff was further trapped into the danger by the open gate, which was an implied invitation to proceed.

I think this was a case which clearly called for the exercise of the functions of jurors, whose judgment and experience especially qualify them to determine the care ordinarily exercised by careful and prudent men under all the circumstances of the case.

Many cases are cited by the court as sustaining the decision, but they are all easily distinguished from this case. Many cases might be cited to uphold these views, and they could likewise be distinguished on the facts.   After all, the law of negligence is based on common sense applied to human experience.   Where the facts are such that reasonable men may draw different conclusions therefrom, the question of negligence becomes a question of fact for the jury.   The trial court and a fair and impartial jury who viewed the premises and saw the dangerous trap where plaintiff was caught, concluded that the plaintiff exercised the care that the majority of careful men would have used under the circumstances, and I fully agree with that view.

I therefore respectfully dissent.