GREEN BAY & WESTERN RAILROAD COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent: STATE HIGHWAY COMMISSION, Intervenor.

*February 8—March 8, 1955.*

For the appellant there was a brief by *Welsh, Trowbridge, Wilmer & Bills* of Green Bay, and oral argument by *F. N. Trowbridge.*

For the respondent there was a brief and oral argument by *William E. Torkelson,* chief counsel.

For the intervenor there was a brief by the *Attorney General* and *Richard E. Barrett,* assistant attorney general, and oral argument by *Mr. Barrett.*

CURRIE, J. The following issues are raised on this appeal:

(1) Is the Public Service Commission required under sec. 195.29 (1), Stats., to make an ultimate finding of fact that the establishment of a proposed new highway crossing across a railroad at grade will promote the *"public safety"* as a condition precedent to issuing an order authorizing such proposed new crossing?

(2) If such finding of ultimate fact is required by the commission, was there compliance with such requirement in the instant case?

(3) Assuming that the Public Service Commission has made an affirmative finding on the question of public safety, is such finding supported by substantial evidence in view of the entire record as submitted?

(4) Is the order of the Public Service Commission, or the statute under which it was entered, unconstitutional as depriving the Railroad Company of its property without due process of law?

(5) Is the Railroad Company entitled to compensation for the diminution in value of its right-of-way property resulting from the establishment of the new proposed highway crossing?

The pertinent portion of sec. 195.29 (1), Stats., which must be considered in passing on the first of the above five questions provides as follows:

". . . and the commission shall determine what, if anything, shall be done *to promote the public safety* and the means by which it shall be accomplished, whether by the relocation of the highway, the alteration in such crossing, approaches, mode of crossing, location of highway crossing, closing of highway crossing, with or without the substitution of another therefor, the construction of a public highway bridge, the removal of obstructions to sight at crossing, or by the use of other reasonable methods, and by whom the same shall be made, and in case of new crossings *the advisability* of allowing such crossings to be established and manner of making them." (Italics supplied.)

The Public Service Commission takes the position that the italicized words *"to promote public safety"* only refer to the alteration of existing crossings and do not apply to the establishment of a new crossing. The learned trial judge in his memorandum decision disposed of this contention as follows:

"It is the opinion of the court that the statute should be construed as a whole—that is as to all crossings the commission must order construction so as *to promote public safety* and in the case of new crossings in addition to safety the advisability of allowing such crossings. It may well be that the legislature intended safety to be a principal element of advisability; however, so that no question may arise as to whether or not safety has been considered, *good practice should require a definite finding as to the safety issue."* (Emphasis supplied.)

The foregoing construction of the statute meets with our complete approval.

This brings us to the second issue raised as to whether the Public Service Commission did, in effect, make an ultimate finding of fact on the safety issue. It is conceded that the

portion of the commission's order labeled "Findings of Ultimate Fact" only contained a finding that the establishment of the new grade crossing "is advisable" and contained no finding as to safety. However, immediately preceding its finding of ultimate fact the commission did find in the portion of its order denominated "Opinion and Findings of Fact" as follows:

"Therefore, the present need for a crossing at other than grade is not warranted, and with the protection above set forth, will be safe."

The words "with the protection above set forth" refer to automatic signals. The trial court held that such finding as to safety was a substantial compliance with the requirements of sec. 195.29 (1), Stats., with which conclusion we also agree. However, in view of the provisions of sec. 227.13,[1] it would have been preferable if the Public Service Commission had included its finding as to the safety issue under that portion of its order entitled, "Findings of Ultimate Fact."

The Railroad Company contends that in the event we do conclude (as we have done) that the Public Service Commission did make a sufficient finding of fact on the safety issue, such finding is not supported by substantial evidence in view of the entire record. At the hearing before the commission the Railroad Company strenuously contended that a crossing at a grade was unsafe and that such crossing should take the form of either an overhead structure or an overpass.

At the point where Military avenue will cross the Railroad Company's right of way, the company maintains what is known as its Howard yard, consisting of a main track and two passing tracks. The two passing tracks extend between

---

[1] Sec. 227.13 DECISIONS. Every decision of an agency in a contested case shall be in writing accompanied by findings of fact and conclusion of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each contested issue of fact without recital of evidence.

Fiske and Taylor streets, the passing tracks being approximately 5,000 feet in length, and there being no highway crossing at present over the company's tracks in such Howard yard area. The new proposed crossing will be located approximately half way between Fiske and Taylor streets, and the new highway will cross the tracks at approximately a right angle, as the tracks run in a general easterly and westerly direction, while Military avenue extends in a general northerly and southerly direction.

The company operates no passenger trains but does run two westbound freight trains and two eastbound freight trains over the main track daily, except Sunday. One westbound train will pass over the projected crossing between 6 a. m. and 7:30 a. m., and the second between 4:30 p. m. and 8 p. m. One eastbound train will pass over such crossing between 5 p. m. and 7:30 p. m., and the other eastbound train will pass such point between 3:30 a. m. and 7 a. m. Two switching operations are conducted in the Howard yard, one at 4:30 p. m., and one at 11:30 p. m. each day. One eastbound and one westbound train frequently meet at the Howard yard which results in one train being forced to use the passing track. When the train is 80 or 90 cars in length, which it frequently is, the whole track is occupied, and, in the event of a grade crossing being established at Military avenue, such train would have to be broken and then later closed which would necessitate switching back and forth across the Military avenue crossing. This is likely to occur between 4 p. m. and 8 p. m. when the hours of traffic are apt to be heavy.

The State Highway Commission took a traffic count and estimated that 1,200 vehicles would pass over the proposed crossing each twenty-four hours, with a peak of 120 per hour. On the other hand, evidence adduced by the Railroad Company disclosed that the Highway Commission's count failed to take into consideration traffic which is generated in the

city of Green Bay from a number of large trucking and manufacturing companies. Witnesses for the Railroad Company estimated that about 3,000 vehicles per day would use the crossing. The area surrounding the proposed crossing is relatively flat so that operators of vehicles approaching such crossing and using the same would have good visibility of any approaching trains. Furthermore, the trains are operated at a maximum speed of 50 miles per hour.

The Railroad Company offered further testimony that it intends to enlarge the Howard yard so as to relieve present congestion in the downtown Green Bay area. Under such expansion program such proposed enlarged yard would be used for interchange operations with two other connecting railroads, and the making up of trains. However, to enlarge the Howard yard would require the acquisition of additional land, an amendment to the zoning ordinance of the city of Green Bay, and the consent of at least one of the interchanging railroads, none of which has as yet been done.

The State Highway Commission produced testimony that a grade separation overhead would be impractical and not safe because the required incline would interfere with traffic on an adjacent and through intersecting street, thus creating a traffic hazard there. The testimony also disclosed that an underpass was not feasible without providing special drainage facilities, but the Railroad Company offered to construct, install, and maintain such drainage facilities, including the pump or pumps.

The legislature, in enacting sec. 195.29 (1), Stats., has not established any definite standard which can be applied in determining when a crossing at a grade is to be permitted, and when, on the other hand, a new crossing, if found advisable, must be by overhead structure or underpass, for the statute purposely clothes the commission with wide discretion to determine the methods which should be required at the crossing "to promote the public safety." It may be conceded

that a crossing by means of an overhead structure or underpass on a fairly busy thoroughfare, such as U. S. Highway 41 by-pass in the city of Green Bay undoubtedly will prove to be, is more safe than a crossing at grade protected by automatic signals. However, the statute must be reasonably construed to accomplish its objective. As so construed we do not deem that it requires the Public Service Commission to order the type of crossing protection which is most safe, but only such as is reasonably necessary to promote public safety.

As a reviewing court we are in no position on the evidence now before us to hold that a crossing at grade protected by automatic signals is not safe for a traffic load of 3,000 vehicles per day while it would be safe if the traffic load were only 1,200 vehicles per day. It seems to us that what the Railroad Company is asking us to do on this review is to weigh the evidence. This, of course, we have no right to do. The meaning and legal significance of the words *"substantial evidence in view of the entire record as submitted,"* appearing in sec. 227.20 (1) (d), Stats., is made clear in the following cases: *Chicago, M., St. P. & P. R. Co. v. Public Service Comm.* (1954), 267 Wis. 402, 408, 66 N. W. (2d) 351; *Motor Transport Co. v. Public Service Comm.* (1953), 263 Wis. 31, 44 *et seq.*, 56 N. W. (2d) 548; *Universal Camera Corp. v. National L. R. Board* (1951), 340 U. S. 474, 478, 71 Sup. Ct. 456, 95 L. Ed. 456. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record including whatever might fairly be said to detract from its weight. The latter requirement does not, however, furnish a "calculus of the value" by reason of which a reviewing court can assess the evidence.

We, therefore, cannot escape the conclusion that the finding on the safety issue by the Public Service Commission is supported by substantial evidence in view of the entire record.

The next issue to be considered is the constitutional question. The learned trial judge in his memorandum opinion disposed of such issue as follows:

"The contention that the statute (sec. 195.29) which permits the taking of property without just compensation and due process of law is unconstitutional must fail for the reason that the petitioner may properly seek its remedy under the condemnation statutes (ch. 32, Stats.), in a separate proceeding."

In connection with this issue it should be pointed out that sub. (8) of sec. 195.29, Stats., provides: "Any lands needed to carry out the provisions of this section may be acquired." The establishment of the new highway crossing over the Railroad Company's right of way will undoubtedly subject the same to an additional burden, and the foregoing quoted provision of sec. 195.29 (8) would apply thereto. There is nothing in sec. 195.29, or in the order entered by the Public Service Commission before us on this appeal, which would prevent the Railroad Company from instituting condemnation proceedings to enforce its right to compensation for such easement.

Therefore, neither sec. 195.29 (1), Stats., nor said order of the Public Service Commission, has the effect of depriving the Railroad Company of its property without compensation, and such statute and order are not unconstitutional.

The attorney general in the brief submitted in behalf of the State Highway Commission has requested this court to hold that the state can establish a new highway crossing over the tracks of a railroad company without any liability to the railroad company therefor. The theory advanced by the attorney general is that the railroad companies having been granted the privilege by the state of laying their tracks across public highways without paying anything for the privilege, a reciprocal right exists at common law, or by implication under sec. 190.02 (5), Stats., for the state, or an agency thereof,

to lay out a new highway crossing at any time without being required to pay anything therefor to the railroad company. In support of such contention there are cited the decisions of the United States supreme court in *Chicago, M. & St. P. R. v. Minneapolis* (1914), 232 U. S. 430, 34 Sup. Ct. 400, 58 L. Ed. 671; and *Erie R. Co. v. Board of Public Utility Com'rs* (1921), 254 U. S. 394, 41 Sup. Ct. 169, 65 L. Ed. 322. However, an examination of these two decisions discloses that they do not touch directly on the question of the state compensating a railroad company for the easement acquired in laying a new highway crossing over its tracks, but rather hold that the state under its police power can require a railroad at its expense to build and maintain suitable structures, such as an overhead viaduct, or an underpass, with respect to such newly laid out crossing. In other words, the expense of whatever is required to render the new crossing safe may be imposed upon the railroad company.

That there is a distinction between paying the railroad for the easement imposed upon the railroad's right of way as the result of a newly laid highway crossing, and requiring the railroad to pay for the cost of making such crossing safe, was directly held by this court in *Chicago, M. & St. P. R. Co. v. Milwaukee* (1897), 97 Wis. 418, 72 N. W. 1118. In such case the city of Milwaukee commenced proceedings to extend a public street across the railroad company's track and right of way and to have the compensation to which the railroad was entitled therefor determined. The railroad company's damages were assessed at $150 and it appealed to the circuit court and a special verdict was submitted to the jury in which inquiry was made as to thirteen separate items of damage claimed. As to the question inquiring as to the diminishing in value of the railroad company's right of way, the jury found such damages to be $1. On appeal this court found such item of damages proper, and, by reason of construction of a particular statute (the legislative policy underlying which

the court condemned) the railroad company was also held entitled to the expense of planking the crossing and perpetually maintaining such planking. However, the court held that the ten other items of damages found, such as the cost of providing cattle guards and erecting gates and operating and maintaining the same, were not proper items of damage because the state through its police power had the right to compel the railroad company to provide reasonable protective devices to make the crossing safe. Such holding on this latter point is in accord with the two United States supreme court decisions cited above. As to the issue of compensating the railroad company for the additional burden placed upon its right of way, we quote from the opinion by Mr. Justice MARSHALL in that case as follows (p. 435) :

"The plaintiff is entitled to damages for the diminished value of its property in the land taken for the new use, caused by such taking. To be sure such property is held by the railway company, in some respects, for public use, but it has many more of the elements of private property, and we hold the element of damage proper. In this we decline to follow the New York and some other courts holding to a different doctrine."

In *Chicago, Burlington & Quincy R. Co. v. Chicago* (1897), 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, the city of Chicago proceeded by condemnation to extend a street across the track of the railroad company. The matter was duly heard and the jury found damage to the railroad company in the amount of $1, the same amount as found in *Chicago, M. & St. P. R. Co. v. Milwaukee, supra*. The question on appeal to the United States supreme court was whether that court could set aside the verdict of the jury on the ground that the payment of $1 damages amounted to deprivation of the railroad company's property in violation of the due-process clause of the Fourteenth amendment. The court decided such issue in favor of the city and against the

railroad company, and upheld the determination of the Illinois supreme court that the railroad company was only to be compensated for the diminution in its right to use its tracks caused by the new highway crossing. It was also held that the cost to the railroad company of constructing gates and a tower for operating them, in order to protect the crossing, was not a proper item of compensation to be considered because the railroad company had accepted its charter subject to the power of the state to provide for the safety of the public. Thus the United States supreme court made the same distinction which our court some eight months later did in *Chicago, M. & St. P. R. Co. v. Milwaukee, supra,* although the *Chicago, Burlington & Quincy R. Co. Case* was not cited therein.

We, therefore, hold that under the authority of *Chicago, M. & St. P. R. Co. v. Milwaukee, supra,* the Railroad Company is entitled to recover compensation in a proper condemnation proceeding for any diminution in value of its right-of-way property as a result of the new highway crossing thereof being established by the State Highway Commission pursuant to the order of the Public Service Commission which is the subject of these review proceedings.

*By the Court.*—Judgment affirmed.