LIGMAN, Administrator, Respondent, vs. BITKER, Trustee, MILWAUKEE RAPID TRANSIT LINE, and another, Appellants.

*September 12—October 11, 1955.*

For the appellants there were briefs and oral argument by *John L. Newman* and *Robert F. Kirst,* both of Milwaukee.

For the respondent there was a brief by *Anderson & Murphy* of Milwaukee, and oral argument by *J. Stewart Murphy.*

GEHL, J. There is conflict in some of the testimony. Our conclusion requires that we state only that which tends to support the claims of the plaintiffs. The track of the transit line intersects West Grange avenue, an east-west street, runs north from that point a distance of about 1,500 feet, and then enters a northeast curve. About 850 feet north of West Grange avenue and also intersecting the track is Ridge road. North of Ridge road and upon the transit line's right of way there was a sign directing motormen traveling south to blow the train's whistle. The whistle was not blown at that point on the day in question. No such sign was placed at the approach to West Grange avenue. The motorman failed to sound the whistle at the sign north of Ridge road but did commence sounding it for an appreciable length of time when he reached a point 300 feet north of West Grange avenue and when he saw plaintiff approaching the crossing.

At the place in question the transit line's right of way ran parallel with Highway 100. The west rail of the track was 16 feet east of the east edge of the concrete on the highway. An arterial stop sign for westbound traffic on West Grange avenue was located on the north side of the highway, 49 feet east of the east edge of the concrete on Highway 100, and 29 feet east of the east rail of the railway track. A railroad-crossing sign, with the word "railway" described by one of the witnesses as having been only partly visible, was located on the north side of West Grange avenue three feet west of the highway stop sign and about 26 feet east of the east track of the railway.

June 15, 1951, was a clear day. The motorman approached the intersection at a speed of about 45 miles per hour. When he was about 300 feet from the intersection he observed the plaintiff's automobile approaching from the east on West Grange avenue. At one point he testified it was then the same distance from the intersection and at another that he was then about half that distance therefrom. As soon as he saw plain-

tiff he applied his brakes and sounded the whistle. As plaintiff approached the intersection he reduced the speed of his automobile. When the motorman was about 50 feet from the intersection he saw plaintiff pass the stop sign without stopping. The automobile came to a complete stop astraddle one of the rails of the track. The collision occurred, and the train came to a stop 390 feet south of the intersection.

The trial court found the defendants causally negligent with respect to speed and failing to give adequate warning of the train's approach. Plaintiff was found causally negligent with respect to management and control. Negligence was apportioned, 60 per cent to defendants and 40 per cent to plaintiff. Upon such findings judgment was entered for plaintiff.

In our view of the case it may be assumed, without deciding, that all of the court's findings regarding the conduct of the parties are supported by ample testimony. The real question is, we believe—Was the negligence properly apportioned? We think not. It is our conclusion that the court should have found that the negligence of the plaintiff was at least equal to that of the defendants. It is true, as plaintiff contends, that ordinarily the comparison of negligence is for the jury. When, however, it appears that the negligence of the plaintiff is, as a matter of law, as great as or greater than that of the defendant, it is not only within the power of but it is the duty of the court to so hold.

Counsel urge that plaintiff has the benefit of the presumption that he observed the precautions which the law prescribes. He has, but that presumption disappears when it becomes apparent, as it does in this case, that had he made an efficient observation, he would have discovered the approach of the train and could have prevented the collision had his automobile been under proper control. *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259.

It was his duty to have his automobile under such control that he could have brought it to a stop before he reached the defendant's tracks and before he placed himself in a situation which resulted in his death. While his view to the north was somewhat obscured there is nothing in the record to indicate or suggest that if he had made proper observation he would not have seen the approaching train. If trees and shrubbery were of sufficient density to interfere with his view to the north it was his duty to exercise a higher degree of care in the control of his automobile than he did and to apply his sense of hearing. It does not appear that there was such a density of trees and shrubbery as to have made it impossible for him to see the approaching train.

If he saw the train approaching the intersection and, under the circumstances, attempted to cross the track, he was grossly negligent in precipitating himself into a situation of grave danger. If he attempted to cross without looking before he reached the tracks, he was guilty of failure to exercise care in any degree. His apparently complete indifference to the peril is indicated by his failure to have stopped at the crossing despite the presence of a stop sign and a railroad crossing signal. Plaintiff's failure to exercise any degree of care for his own safety must, of course, be held to be the equivalent at least of the negligence of the motorman.

*Carr v. Chicago & N. W. R. Co.* 257 Wis. 315, 43 N. W. (2d) 461, is cited by plaintiffs as supporting their contention that we may not disturb the trial court's apportionment of negligence. That was a railway-crossing case, was in some respects similar in its facts to the instant case, and the jury's apportionment of 60 per cent of the negligence to defendant railway company and 40 per cent thereof to the plaintiff was permitted to stand. There are some substantial and controlling differences however. In the instant case there was no statute or ordinance limiting the speed of the train; in the *Carr Case* the speed of the train was limited by statute

to 20 miles per hour. The train involved in the *Carr Case* was traveling at the rate of 75 miles per hour, three and one-half times the legal speed limit; the train operated in the instant case was traveling at no greater speed than 45 miles per hour and in violation of no statute or ordinance. In the *Carr Case* the intersection was in a village; here the collision occurred in open country. These distinguishing factors may not be overlooked in considering the conduct of the respective actors.

The duty of a motorman with respect to the speed at which he operates his train and the warning signals he gives in a rural area, and where there is no legal speed limit is, in the very nature of things, different than that of an engineer operating his train through a village where the speed is limited by statute. The conduct of the engineer and the effect of his act or omission, under the circumstances stated, is to be measured by a different standard than is that of the motorman.

*By the Court.*—Judgment reversed. Cause remanded with direction to enter judgment dismissing the complaint.