BEMBINSTER, Appellant, v. AERO AUTO PARTS, INC.,
Respondent.*

*November 30, 1960—January 10, 1961.*

* Motion for rehearing denied, with $25 costs, on March 7, 1961.

For the appellant there were briefs by *Schmitt & Wurster* of Merrill, and oral argument by *Leonard F. Schmitt*.

For the respondent there was a brief by *Gorman & Gorman* of Wausau, attorneys, and *Rieser, Stafford, Lesselyoung & Rosenbaum* of Madison of counsel, and oral argument by *Willard S. Stafford* and *David A. Gorman*.

MARTIN, C. J. On January 10, 1957, the date of the accident, defendant had possession and control of approximately 60 acres of land near Wausau, upon which premises it operated a business for profit. The property is bisected by a single track of the North Western Railroad running generally east and west. The railroad right of way extends 50 feet north of the north rail of the track. Some of defend-

ant's buildings are located south of the track, others to the north thereof. Defendant maintains a private road between the north and south entrances of its property for the convenience of its employees and customers traveling from one part of the yard to the other. This road runs south from a warehouse, curves to the east for about 300 feet, then turns straight south about 150 feet to the railroad track. In the last 75 feet the road rises roughly three feet to the elevation of the track.

On the day of the accident the road was slippery with packed snow. There was brush and shrubbery upon defendant's property north of the track and east of the road. It was 10 to 15 feet in height and extended up to the east side of the road at the north edge of the right of way.

Plaintiff entered the premises from the south, crossed the railroad right of way and went to defendant's warehouse. After carrying on some business there he left around 3 p. m. He drove south from the warehouse at 12 to 15 miles per hour; he had the window on the driver's side of his car open about two inches to keep the windshield and windows clear. He testified that while traveling east around the curve for 300 feet he could have seen a train coming from the east three quarters of a mile away if it had not been for the brush on defendant's property which obstructed his view.

Archie Becher, a professional engineer and surveyor, testified that he sat in a car about 250 feet north of the crossing and sent a man down the track to the east with a pole having a flag attached at a point 14½ feet from the bottom. (A locomotive similar to that involved in the accident was measured and found to be 14½ feet high.) The witness could see the man quite easily for a distance of 150 feet from the crossing, then could see the flag plainly through and above the brush up to a point 250 feet down the track where he became completely obscured.

Plaintiff testified that after rounding the curve and turning south he looked to the east and could see nothing. When he was 50 feet from the crossing he looked west, so he kept going, came onto the crossing and was struck by a freight train coming from the east. He never saw the train.

The locomotive fireman who operated the diesel of the train which struck the plaintiff testified there were four diesel engines pulling 114 cars. The train was late that day. The engine bell was ringing continuously until the time of the accident. As the train came through the yard, the west limits of which are about 500 yards beyond the crossing, it was traveling at about 18 miles per hour, as indicated by a speedometer located in the cab. The yard speed limit is 20 miles per hour. He testified that he saw the plaintiff when he was farther than 50 feet from the crossing.

Plaintiff testified he knew, or thought he knew, the schedule of the trains using the track; that a westbound train came through in the forenoon and an eastbound train sometime between 2 and 4 in the afternoon. He expected that a train coming at this time of day would be from the west. He testified that if he had looked east when he came to the railroad right of way he could have seen the train and could have stopped before going on the track. His speed was 10 to 12 miles per hour and he could have stopped his car in five to ten feet if it would not slide.

Plaintiff is the seventy-five-year-old father of the manager of the defendant company. He had worked for the defendant during the previous summer, had crossed the track many times and knew that the brush on the east side of the road had been there for years. He had crossed the track that day from the south when driving to the defendant's warehouse. He knew the condition of the road. He knew the brush obstructed his view of trains approaching from the east until he got to the right of way 50 feet from the track.

The duty of a driver approaching a railroad crossing was set forth in *Roth v. Chicago, M. & St. P. R. Co.* (1925), 185 Wis. 580, 201 N. W. 810 (syllabus 1), as follows:

"The presence of a railroad track is always a signal of danger, and the degree of care which a traveler is required to exercise in approaching a railroad crossing must at all times be commensurate with such danger. The driver of an automobile must use not only his sense of hearing, but his sense of vision, and if necessary in order to properly exercise the latter, he must slow up his speed or stop his machine."

Plaintiff contends that the evidence shows he used *some* care for his own safety and thus it was for the jury to apportion the negligence. The trial court was of the opinion that he exercised no care whatever, and we agree.

Assuming defendant was negligent in failing to remove the obstruction of the brush on its premises at the northeast corner of the crossing, the evidence is undisputed that plaintiff knew of such obstruction. He also knew that when he reached a point 50 feet from the track he would have a clear view of approaching trains. But he admits that the last time he looked to the east was when he was about 120 feet north of the crossing, from which point his view to the east was obstructed. Becher's testimony shows he could have seen the train if he had looked to the east 250 feet away from the crossing. Plaintiff argues that he exercised some care by looking to the west when he came to the right of way, because he expected a train from that direction and because he heard noise from the west.

Looking in one direction only at a railroad crossing does not constitute some care. The driver has the absolute duty to look in both directions before going onto the track. In the *Roth Case, supra* (p. 584), plaintiff first looked to his right when "he was at a point where he was about to enter the danger zone," then looked to his left and saw the train at a distance of about 12 feet. This court held that, "Looking

toward the west at a time when the vehicle had already proceeded into the danger zone amounts to an exercise of no precaution whatever." In this case, the plaintiff looked to the west as he entered upon the railroad right of way but made no observation to the east.

Plaintiff's failure to look in both directions is not excused by the fact that he expected a train from the west rather than from the east. As said in *Guhl v. Whitcomb* (1901), 109 Wis. 69, 73, 85 N. W. 142:

". . . knowledge of a custom to run trains in only one direction on the particular track was no excuse for failure to look both ways.

". . . the known presence of a railway track is itself notice of the momentary peril of a passing train at all times, and the duty to look and listen is not relaxed by any opportunity for theorizing or difference of opinion as to whether a train is or is not likely to pass. Observation, not logic, is the proper precaution."

Moreover, it clearly appears from plaintiff's own testimony that his failure to look to the east was not caused by the fact that the brush obstructed his vision. He did not look to the east because he did not expect a train from that direction and because he heard a noise coming from the west. The obstruction of the brush, of which plaintiff was fully aware, increased the care which it was his duty to exercise. See *Ligman v. Bitker* (1955), 270 Wis. 556, 560, 72 N. W. (2d) 340. If, indeed, his expectation of a train from the west and the noise from that direction caused him to look that way first, and he could not, without stopping, make an observation to the east before entering on the track, it was his duty to stop his car and do so. Plaintiff's only explanation for not stopping to make a full observation is that the road was slippery on the incline to the track and if he had stopped he would have had to back his car in order to proceed.

A somewhat-similar situation was presented in *Kanass v. Chicago, M. & St. P. R. Co.* (1923), 180 Wis. 49, 192 N. W. 383, where the plaintiff was driving a loaded tractor and it was argued that in order to look for the train after coming within 60 feet of the track he would have had to reduce his speed and would not have made the crossing. The court held that the desire to make the crossing in a particular manner did not absolve the driver from the duty of maintaining a proper lookout when he was knowingly attempting to cross a railroad track.

It is undisputed that the bell on the diesel engine rang continuously for a distance of about four miles before the train reached the crossing in question, that the horn had been sounded three tenths of a mile from the crossing, and that the train was traveling at only 18 miles per hour. Although plaintiff maintains he exercised care as to listening, he did not hear the horn, the bell, or the sound of the engine and attempts to excuse that failure by saying that the wind was from a direction which took the sound away from him. Even if this were said to establish that plaintiff exercised fully his sense of hearing, it may be observed, as in the *Roth Case,* that the exercise of that sense is not always reliable. In any event, it would not excuse the plaintiff from also keeping a visual lookout in circumstances where a proper observation at a time when his view became unobstructed would have revealed the approaching train.

In view of our conclusion that plaintiff failed to exercise any degree of care for his own safety, it is unnecessary to discuss other questions raised in the briefs.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 7, 1961:

MARTIN, C. J. (*on motion for rehearing*). Appellant alleges several grounds for his motion for rehearing, one of

which requires this memorandum. In the original opinion, ante, p. 252, it was incorrectly stated at the middle of page 257a that:

"It is undisputed that the bell on the diesel engine rang continuously for a distance of about four miles before the train reached the crossing in question, that the horn had been sounded three tenths of a mile from the crossing, and that the train was traveling at only 18 miles per hour."

The evidence as to the bell and the horn was the positive testimony of the locomotive engineer and fireman. It was disputed only by the negative testimony of appellant and the witness Miller. As to the speed of the train, it was testified to be 18 miles per hour on the basis of observation, custom and usage, and it was further shown by the expert testimony that the train stopped within a distance of 500 feet, which was the stopping distance of such a train going 18 miles per hour under the existing conditions. This testimony has probative force; that of Miller, which was based on casual observation, has little.

The inaccuracy of our original statement is immaterial, however, since it referred to such facts as had a bearing on the appellant's exercise of care as to listening, and it was followed by language holding that even if such facts were considered as establishing the exercise of due care in that respect, it would not relieve appellant of the absolute duty to look in both directions before crossing the track, failure of which, under the authorities, amounts to the exercise of no care at all.

*By the Court.*—The motion is denied with $25 costs.