VERRETTE and another, Appellants, v. CHICAGO & NORTH WESTERN RAILWAY, Respondent.

*No. 143. Argued September 3, 1968.—Decided October 1, 1968.*
(Also reported in 161 N. W. 2d 264.)

22

For the appellants there was a brief by *Walther & Burns* and *David L. Walther,* all of Milwaukee, and oral argument by *David L. Walther.*

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell* and *Phillip E. Crump,* all of Milwaukee, and oral argument by *Mr. Crump.*

BEILFUSS, J.   Two issues are presented:

(1) Is a railroad grade crossing a place of employment within the terms of the safe-place statute?

(2) Did the trial court err in granting defendant's motion for a directed verdict?

The plaintiff in his complaint alleges the railroad crossing was owned and used as a place of employment by the defendant and the plaintiff was a frequenter, and that the defendant failed to furnish and use safety devices and safeguards reasonably adequate to render such place of employment safe as the nature of the premises permits as required by the safe-place statute.[2]

He states that the railroad was statutorily obligated to construct and maintain in a good safe condition that part of the highway extending across the track (sec. 86.13 (1),

---

[2] "101.01 (1) The phrase 'place of employment' includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit, . . ."

"101.06 **Employer's duty to furnish safe employment and place.** Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe."

Stats.) and that the train crew, employees of the railroad, were actually working at this location when the train passed over the crossing. From these facts the plaintiff concludes the crossing was a place of employment. In an offer of proof the plaintiff established that amber flashing lights had been installed after the accident and then argues that because the only warning device was a reflectorized "crossbuck," the place of employment was not safe as the nature of the premises would permit.

About two years before the accident Military road was extended by the city of Green Bay to facilitate industrial development. This extension necessitated the crossing in question.

The city petitioned the public service commission for the establishment of this grade crossing. The railroad company and the city agreed to the type of crossing, its location, payment of costs, and maintenance. This agreement was approved by the commission. The commission found:

"The street extension will require a crossing at grade with tracks of the Chicago and North Western Railway Company. For all practical purposes the crossing will be at right angles and the street approaches level. A good view of approaching trains is available in all 4 quadrants of the crossing. Scheduled rail traffic over the crossing consists of an average of 16 trains a day. The maximum train speeds authorized by railroad timetable is 70 miles per hour for passenger trains and 20 miles per hour for freight trains. It is proposed that the crossing be protected with reflectorized crossing signs. The train whistle will be blown for the crossing.

" . . .

"The establishment of the proposed new crossing is advisable and with the installation of reflectorized crossing signs appropriate to the situation, and the establishment of the new crossing will be consistent with the public safety."

The defendant railroad contends that once the public service commission has taken jurisdiction and acted in

the matter by making findings and orders, the determination by the commission is final and conclusive of the standard of care required. In support of this position it cites *Schulz v. Chicago, M., St. P. & P. R. R.* (1952), 260 Wis. 541, 545, 51 N. W. 2d 542:

"The railroad submits that its duty in respect to warning devices is to follow the statute and the orders, if any, of the public service commission and having here obeyed the statute and not having received any order from the commission it has performed its whole duty in this respect. We concede that if the commission has directed a crossing to be guarded in a particular manner and the railroad has done as directed, it is not required to go further to satisfy a jury's idea of adequate protection. In our present case the commission had not taken notice of this crossing. By giving the commission jurisdiction over the field the legislature did not abolish the common-law duty of the railroad to take such additional precautions as the exercise of due care required until such time as the commission might exercise its jurisdiction over a particular crossing."

In response to this contention the plaintiff argues that the commission did not conclusively consider the crossing safety factor under its sec. 195.29,[3] Stats., proceeding which went to the establishment of the crossing and that

[3] "Railroad highway crossings. (1) PETITION, HEARING, ORDER. Upon petition by the common council or board of any city, village, town or county within or bordering upon which a highway or street crosses a railroad, or a highway or street is proposed to be laid out across a railroad, or a public highway bridge across a railroad is required to connect existing streets or highways, or upon petition by any railroad whose track crosses or is about to cross, or is crossed or about to be crossed by a street or highway, or upon petition by the state highway commission, in cases where provision has been made for the improvement of the highway adjacent to such crossing under any state aid or federal aid law, that public safety requires an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, or the closing of the crossing, and the substitution of another therefor at grade or not at grade, or the removal of obstructions to the view at such crossing, the relocation of the highway, or requires the

the safety factor must be considered under sec. 195.28.[4]
He further argues that an order of the commission can-
not supersede the legislative safe-place statute.

determination of the manner of making such new crossing, or of
making the proposed improvement or promoting the public safety
or public convenience through any other reasonable method, and
praying that the same may be ordered, the commission shall give
notice to the parties in interest and proceed to investigate the
same and to order a hearing thereon in the manner provided by
section 196.26; and the commission shall determine what, if any-
thing, shall be done to promote the public safety and the means by
which it shall be accomplished, whether by the relocation of the
highway, the alteration in such crossing, approaches, mode of
crossing, location of highway crossing, closing of highway crossing,
with or without the substitution of another therefor, the construc-
tion of a public highway bridge, the removal of obstructions to
sight at crossing, or by the use of other reasonable methods, and
by whom the same shall be made, and in case of new crossings the
advisability of allowing such crossings to be established and man-
ner of making them."

[4] "Protecting grade crossings. Upon petition of the city council,
village board, member of town board, superintendent of highways
or by 5 or more freeholders in any town, village or city, or of any
railroad corporation to determine whether a public highway and
railroad grade crossing is dangerous to human life, the commis-
sion shall proceed as provided in s. 196.26. Notice of hearing shall
be served upon the highway commission, which shall be an in-
terested party, and any recommendation it may file with the
public service commission at or prior to the hearing regarding
crossing protection or apportionment of the cost thereof shall be
considered as evidence in the proceeding. The commission shall
determine whether the existing warning devices at such crossing
are adequate, and if the crossing complained of is dangerous to
human life, the commission may order the railroad company to
keep a flagman there, or may order the installation of gates, elec-
tric signals or other suitable safety device at such crossing. The
cost of such protection, excluding the cost of maintenance or flag-
men, shall be apportioned by the commission between the railroad
and the state on the basis of benefits received by the railroad and
the public, respectively. The public's portion shall be paid by the
state from the appropriation in s. 20.420 (3) (v). In no case shall
the state's share exceed 70% of the cost."

Sec. 195.29, Stats., does concern itself with the establishment of a crossing and the type of crossing. However, public safety is a proper consideration in the commission's determination of the advisability of allowing the crossing. (*See Green Bay & W. R. R. v. Public Service Comm.* (1955), 269 Wis. 178, 68 N. W. 2d 828.) Sec. 195.28 more properly is adopted to the question of whether crossing warnings in existence are adequate.

As to the second phase of the plaintiff's contention, namely, that an order of a commission cannot supersede the safe-place statute, this court has stated in *Delany v. Supreme Investment Co.* (1947), 251 Wis. 374, 29 N. W. 2d 754, at page 380:

"While . . . the legislative language, where open to construction, should be read liberally in favor of the purpose of the [safe-place] statute, this court has on numerous occasions held that the safe-place statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous and peremptory."

The language of sec. 195.29, Stats., is clear and peremptory. It specifically deals with the establishment of railroad highway crossings and this section, together with ch. 192, gives the public service commission exclusive jurisdiction once it has acted.

A further reason why the safe-place statute has no application to the facts of this case is that the plaintiff in no way complains about the type of crossing or its immediate approaches, nor does he contend the crossing (the place of employment) was in any way structurally deficient or in want of repair. Nor does he allege an inadequate warning as to the presence of the crossing. He does complain of an inadequate warning of the presence of the approaching train and a restricted view. As stated above, the commission's order that "installation of reflectorized crossing signs appropriate to the situation,

and the establishment of the new crossing will be consistent with the public safety" and "[a] good view of approaching trains is available in all 4 quadrants of the crossing" is conclusive as to the adequacy of the fixed warning signals and devices and of the railroad's obligation to improve the view.

We are, therefore, of the opinion that the safe-place statute has no application to the facts of this case.

The rules of law to be applied by the court when confronted by a motion for a directed verdict have often been stated by this court. The quotations that follow summarize them:

"A case should be taken from the jury and a verdict directed against a party:

" ' ". . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964) 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' *Milwaukee v. Bichel, ante,* p. 66, 150 N. W. (2d) 419." *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 698, 699, 151 N. W. 2d 741.

"This court has many times recognized that comparison of causal negligence under sec. 895.045, Stats., is peculiarly a jury function, and only in rare cases is it permissible for a court to hold as a matter of law that the negligence of one party must constitute at least 50 percent of the total.

". . .

"This does not, however, mean it is never permissible for the court to hold as a matter of law that the plaintiff's conduct reflects at least 50 percent of the negli-

gence." *Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 715, 716, 150 N. W. 2d 460.

"Where, however, it appears that the negligence of the plaintiff is as a matter of law greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold." *Hollie v. Gilbertson* (1968), 38 Wis. 2d 245, 250, 156 N. W. 2d 462.

The plaintiff in his brief states:

"There was ample evidence, or offers of proof, in the present case that would have entitled a jury to find that in fact the defendant had violated the Safe-Place Statute, and there was also enough evidence, or offers of proof, to allow a jury its freedom to compare the negligence of the plaintiff and defendant."

Because we have concluded the safe-place statute does not apply, the ruling of the trial court sustaining the objection to the testimony contained in plaintiff's offer of proof was correct and this testimony cannot be considered in arriving at our opinion as to the propriety of the order for the directed verdict.

The only evidence in the record as to how the accident happened is the testimony of the plaintiff, Mr. Verrette, and photographic exhibits received in connection with his testimony.

The evidence viewed in the light most favorable to the plaintiff reveals that he knew the road and the location of the track; that he was traveling 20 to 25 miles per hour until he was about 125 feet from the crossing when gradually he slowed down to five to 10 miles per hour; that the pump house and the brush restricted his view; that he did not see or hear the train until he was about 35 feet from the track and the train was 10 to 12 feet from the crossing; that he applied his brakes and slid into the second parlor car.

He further testified that he did not hear the train whistle or bell, that he had his window down one and one-half inches and probably had his radio on, and that he would have heard the whistle if it had been blown.

On cross-examination he admitted the pump house was 100 feet from the track and the brush was 77 feet, and that his view of the track was unobstructed from that point on but that he did not see the train until he saw and heard it when he was 35 feet from the crossing.

A photograph introduced as an exhibit shows he had a clear view of 200 feet down the track in the direction of the train when the brush pile was no longer an obstruction.

There was no testimony as to the speed of the train nor the lookout of the crew.

The only evidence of negligence on the part of the railroad in the record is the testimony of the plaintiff that he did not hear the train whistle. Even though the crossing is within the city limits of Green Bay, the public service commission's order authorizing the crossing provides: "The train whistle will be blown for the crossing."

The testimony of the plaintiff as to the train whistle is negative testimony.

In *Zenner v. Chicago, St. P., M. & O. Ry.* (1935), 219 Wis. 124, 126, 262 N. W. 581, this court stated:

"While purely negative testimony is not enough to raise an issue of fact for the jury, testimony negative in form may, under certain circumstances, be considered to be positive in substance and sufficient to raise an issue of fact. In order to do so, however, it must appear that the witness so testifying was in a position where he could hear or see; that his attention and his senses were directed to ascertaining whether the event was about to occur, and that the event did not happen."

While the plaintiff's testimony as to the whistle is of doubtful validity, we cannot say a jury acting reasonably could not find that the whistle was not blown. If the whistle was not blown the jury could conclude it was causal negligence.

However, in our opinion the evidence is overwhelming that the plaintiff was causally negligent as to lookout and management and control. The evidence is undisputed

that he knew the track was there; that he had a view of 200 feet down the track when he was 77 feet from the track; that he was traveling at a slow speed and did not see or hear the train until he was 35 feet from the track and was unable to stop his car in the 35 feet even though his speed was from five to 10 miles per hour.

"Clearly, the various views taken by him before he came in close proximity to the defendant's right of way were absolutely futile on account of the existing obstructions. It then became incumbent upon him to exercise properly his sense of vision at a time where the same would be available to him in such a way as to protect him from injury. In such a situation it becomes necessary, in order that his vision may be properly exercised, to slow up his speed or to stop his machine." *Roth v. Chicago, M. & St. P. Ry.* (1925), 185 Wis. 580, 584, 201 N. W. 810.

The known presence of a railroad track is always a signal of danger and the degree of care which a motorist is required to exercise in approaching the crossing must be commensurate with such danger.[5]

Under the facts of this case we are clearly of the opinion that the causal negligence of the plaintiff exceeded that of the defendant. The trial court did not err in granting the motion for directed verdict.

*By the Court.*—Judgment affirmed.

---

[5] *Bembinster v. Aero Auto Parts* (1961), 12 Wis. 2d 252, 107 N. W. 2d 193, 108 N. W. 2d 115.