GAMBLE-SKOGMOS, INC., a foreign corporation, and another, Plaintiffs-Respondents, v. CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, a foreign corporation, Defendant-Appellant.

*No. 581 (1974). Submitted on briefs February 4, 1976.— Decided March 2, 1976.*
(Also reported in 238 N. W. 2d 744.)

768

For the appellant the cause was submitted on the brief of *Roger S. Bessey, Michael J. Donovan,* and *Borgelt, Powell, Peterson & Frauen,* all of Milwaukee.

For the respondents the cause was submitted on the brief of *Irving W. Zirbel* and *Binder, Zirbel & Howard;* and *Jeffrey P. Aiken* and *Frisch, Dudek & Slattery, Ltd.,* all of Milwaukee.

ROBERT W. HANSEN, J. The issue presented by this appeal is narrowed to answering this single question: Can a railroad be negligent in installing a certain type of warning signals at a crossing when those signals have

been authorized by an order of the public service commission?

At the trial the director of the bureau of railroad safety for the public service commission testified that there are two basic types of commission orders as to railroad crossing protection devices: (1) those that authorize conduct, and (2) those that require conduct. The first type, authorizing conduct, usually involves an inspection. The second type, requiring conduct, usually involves a hearing. The order in the case before us was the first type, one authorizing conduct.

The distinction between these two types of commission orders is to be kept in mind in analyzing the Wisconsin cases dealing with the issue here presented. The first such case, *Schulz v. Chicago, M., St. P. & P. R. Co.*,[1] involved a fatal accident at a railroad crossing that took place in a blizzard. The tracks in that case were marked by crossbucks bearing the words "railroad crossing." In that case the commission had issued neither an order authorizing nor an order requiring protection devices at the crossing.[2] There this court held that, by giving the commission jurisdiction over railroad crossings, the legislature did not abolish the common-law duty of the railroad "to take such additional precautions as the exercise of due care required until such time as the commission *might exercise its jurisdiction over a particular crossing.*"[3] Where the commission "has directed a crossing to be guarded in a particular manner and the railroad has done as directed," this court, in *Schulz*, conceded that the railroad "is not required to go further to satisfy a jury's idea of adequate protection."[4]  Where

---

[1] (1952), 260 Wis. 541, 51 N. W. 2d 542.

[2] *Id.* at page 545, this court stating: "In our present case the commission had not taken notice of this crossing."

[3] *Id.* at page 545.

[4] *Id.* at page 545.

the commission order, presumably following a public hearing, directs or requires the installation of certain protective devices, it would appear that the railroad is immunized against a claim that it was negligent in not doing more or differently than the commission directed and required. However, in the case before us, we have only an order authorizing certain conduct, not an order directing or requiring such conduct on the part of the railroad.

The strongest support for the railroad's contention that a commission order authorizing conduct ought be viewed the same as an order requiring conduct is found in the second case on the issue, *Verrette v. Chicago & N. W. Ry.*[5] In that case an accident occurred at a railroad crossing which had a reflectorized crossbuck sign with the letters "R. R." The plaintiff driver brought suit on two grounds, (1) the safe-place statute,[6] and (2) common-law negligence. There the city and railroad had agreed to type of crossing and maintenance, and the city had petitioned the public service commission for approval of the street crossing the tracks at grade level and the installation of reflectorized crossbuck signs. The commission approved both, finding the establishment of the grade crossing with reflectorized crossing signs to be "consistent with the public safety."[7] This court held that the commission order did include the question of whether crossing warnings authorized were adequate, and held that the public service commission did have

[5] (1968), 40 Wis. 2d 20, 161 N. W. 2d 264.

[6] *See:* Secs. 101.01 (1) and 101.06, Stats. 1967.

[7] *Verrette v. Chicago & N. W. Ry., supra,* footnote 5, at page 25, quoting the commission order that, in part, held: " 'The establishment of the proposed new crossing is advisable and with the installation of reflectorized crossing signs appropriate to the situation, and the establishment of the new crossing will be consistent with the public safety.' "

"exclusive jurisdiction once it has acted."[8] This was said as to the applicability of the safe-place statute. As to common-law negligence, with the only claim or testimony as to such negligence on the part of the railroad being that of plaintiff driver that he did not hear the train whistle, our court affirmed the granting of a directed verdict for the railroad holding that ". . . the causal negligence of the plaintiff exceeded that of the defendant."[9] This case supports the railroad's position, but only if it can be said, here as there, that the commission order authorizing certain protective devices considered and resolved the public safety questions involved.

However, the conclusion reached by the trial court is entirely consistent with the third and most recent case on the issue, *Kurz v. Chicago, M., St. P. & P. R. Co.*[10] In that case the railroad crossing where the accident occurred had two flashing light signals for eastbound traffic and two flashing light signals for westbound traffic. The signals involved were installed to plans approved by orders of the public service commission.[11] Thus these orders approved conduct, rather than requiring or directing it.[12] Holding that the general jurisdiction granted to the public service commission to require safety devices to be not enough "to immunize the railroad from the doctrine of common-law negligence,"[13] this

[8] *Id.* at page 28.

[9] *Id.* at page 32.

[10] (1971), 53 Wis. 2d 12, 192 N. W. 2d 97.

[11] *Id.* at pages 21, 22, this court stating: "The signals at the Bluemound crossing were installed pursuant to plans first approved by the commission in 1930 and changes thereof approved as late as 1961."

[12] *Id.* at page 22, this court holding: "While the public service commission approved the signals as requested by the railroad, it did not make any order in respect to the crossing."

[13] *Id.* at page 23. As to common-law duty owed, *see also: Id.* at page 21, this court stating: "A railroad at common law has the duty of ordinary care to install and maintain warning devices at

court, in *Kurz,* made the test or requirement for such immunization that: "The public service commission must exercise its jurisdiction and make an order based upon the safety requirements of the crossing."[14] It further held: "[T]he approval of plans for signals proposed by the railroad without more is not enough."[15]

Thus, under *Kurz,* to immunize a railroad from liability for common-law negligence it is not enough that the public service commission have authorized or approved plans for protective devices at a grade crossing. To confer such immunity the order of the commission must be based on a review of the public safety requirements of the particular crossing, and must direct and require the installation of such crossing protection devices as will meet such established safety requirements. Such holding is not inconsistent with the decision in *Verrette,* where the order of the commission clearly found the protective devices installed to be "consistent with the public safety."[16] Nor is it inconsistent with *Schulz* holding immunity follows where, with public safety considered, the commission "has *directed* a crossing to be guarded in a particular manner and the railroad has done *as directed.*"[17] (Emphasis supplied.) Even if the *Kurz* decision did not thus square with *Schulz* and *Verrette,* we would follow *Kurz* as the latest and controlling statement of the rule of law involved.

a grade crossing and to use such speed in crossing public highways as is reasonably adequate under the conditions and circumstances existing at the crossing to protect motorists and which is commensurate with the requirements of the public safety and consistent with the public need for adequate and expeditious train service."

[14] *Id.* at page 23.

[15] *Id.* at page 23.

[16] *Verrette v. Chicago & N. W. Ry., supra,* footnote 5, at page 25.

[17] *Schulz v. Chicago, M., St. P. & P. R. Co., supra,* footnote 1, at page 545.

With the rule of law determined, the issue appealed becomes a matter of applying such rule to the facts of this case. The trial court, in a well-reasoned opinion, found that there was here requested from the commission no more than ". . . a pro forma approval of the installation of the signals as a result of an agreement . . . between the railroad and the highway commission, and sec. 195.29 (1), Stats., authorizes that kind of an approval without a formal hearing." (The petition here was filed under sec. 195.291, which permits the commission to dispense with a public hearing.) The trial court held that the ". . . sum total of what the public service commission did was a pro forma approval, and eventually its consent to the installation of signals of the kind in question." The trial court concluded that the order of the commission authorizing the installation of signals was ". . . tantamount to consent extended to the railroad and the highway commission as distinguished from a command to the railroad after an evaluation of the need for safety in the area. . . ." After reviewing the entire record, including the testimony of the director of the bureau of railroad safety for the public service commission, we find the findings and conclusions reached by the trial court to be adequately supported by the testimony in this record. We affirm the trial court holding that the railroad was not immunized from liability for common-law negligence for the reason that the order issued by the commission was an approval of plans for signals proposed by the railroad. It was not an order, following a hearing or full and complete investigation, based upon and establishing the safety requirements of the crossing.

*By the Court.*—Judgment affirmed.