Ryan ANDERSON et al., Plaintiff,

v.

**WISCONSIN CENTRAL TRANSPORTATION COMPANY,** Defendant.

No. 03C0304.

United States District Court, E.D. Wisconsin.

July 27, 2004.

Jerome R Kerkman, Kerkman Law Office, Milwaukee, WI, for Ryan M Anderson, Plaintiff.

Brian D Baird, Borgelt Powell Peterson & Frauen SC, Milwaukee, WI, for Wisconsin Central Transportation Corporation, Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Ryan Anderson ("plaintiff") brought this action in state court seeking damages for injuries he sustained when his car collided with a freight train operated by the Wisconsin Central Transportation Company ("defendant" or "Wisconsin Central") at the County Highway M ("County M") crossing in Waukesha County, Wisconsin. Plaintiff named the West Bend Mutual Insurance Company ("West Bend Mutual"), a partial subrogee, as an involuntary plaintiff and also named a fictitious insurance company as a defendant. Plaintiff now requests that I dismiss the latter entity as a party, which request will be granted. Pursuant to 28 U.S.C. § 1332, defendant timely removed the case. Plaintiff is a Wisconsin citizen, West Bend Mutual is a Wisconsin corporation whose principal place of business is Wisconsin, and Wisconsin Central is an Illinois corporation whose principal place of business is Illinois.[1]

Plaintiff alleges that defendant was negligent in a number of respects including by

---

1. In one of its submissions, defendant stated that: "The defendant disagrees that the Wisconsin Central had its principal place of business in Rosemont, Illinois, though the headquarters building existed in this location. The corporation's principal place of business was throughout the State of Wisconsin." (Def.'s Add'l Reply to Pl.'s Prop. Findings of Fact ¶ 2.) In a subsequent conference with the court, however, defendant acknowledged that its headquarters and its principal executives were located in Illinois and withdrew its statement that its principal place of business was Wisconsin. In any case, under the "nerve center" test employed by the Seventh Circuit for determining a corporation's principal place of business, such place of business is where its headquarters are located. *See, e.g., Kanzelberger v. Kanzelberger,* 782 F.2d 774, 777 (7th Cir.1986). Thus, at the time of removal defendant's principal place of business was Illinois, and for purposes of jurisdiction, defendant was diverse from both plaintiffs.

operating the train at an unreasonable speed, failing to reduce the train's speed as it approached the crossing, failing to sound an audible warning signaling the train's approach, failing to install and maintain an adequate warning device at the crossing, failing to clear vegetation on its right of way, and violating Wis. Stat. Ch. 195. Defendant now moves for partial summary judgment arguing that some of plaintiff's claims are preempted by federal law and some fail on the merits. Plaintiff cross-moves for partial summary judgment arguing that defendant's preemption defenses are without merit and that in some respects, defendant was negligent as a matter of law.

## I. FACTS

On December 10, 2001, at approximately 9:35 a.m., plaintiff's pick-up truck collided with defendant's train at the County M crossing. There were no gates at the crossing, but there was a set of flashing lights. Plaintiff was driving west on County M, and the train was traveling south. In front of plaintiff was a vehicle driven by Aaron Kumlein. Plaintiff states that Kumlein did not see lights at the crossing, unsuccessfully attempted to stop and, then, accelerated across the tracks before the train reached the crossing. Plaintiff states that as he approached the crossing, he could not see the warning lights because they were washed out by the sun, could not hear the train's horn, and, because the vegetation adjacent to the tracks was not cut, did not see the train until immediately before the collision. As a result of the accident, he was seriously injured.

Additional facts will be stated in the course of the decision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

When both parties have moved for summary judgment, both are required to show that no genuine issues of fact exist, taking the facts in the light most favorable to the party opposing each motion. If issues of fact exist, neither party is entitled to sum-

mary judgment. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt,* 700 F.2d 341, 349 (7th Cir.1983).

Under Fed.R.Civ.P. 56(d), I may grant summary judgment on less than a whole claim. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,* 313 F.3d 385, 391 (7th Cir.2002).

## III. DISCUSSION

### A. Federal Preemption

The Federal Railroad Safety Act ("FRSA") grants the Secretary of Transportation authority to prescribe regulations and issue orders relating to railroad safety. 49 U.S.C. § 20103(a). The FRSA and regulations prescribed pursuant thereto generally preempt state laws covering the same subject matter. *Id.* § 20106. Thus, if a claim against a railroad is brought under state law but falls within the subject matter of a federal regulation, the claim is preempted unless it relates to a local hazard. *Id.* Because preemption is an affirmative defense, the defendant bears the burden of proof on the issue. *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 629 (7th Cir.2003). In the present case, defendant moves for summary judgment arguing that a number of plaintiff's claims are preempted, and plaintiff cross-moves for summary judgment arguing that defendant's preemption defense should be dismissed based on insufficient evidence.

### 1. Inadequate Warning Device Claim

When federal funds are used to install a warning device at a railroad crossing, 23 C.F.R. §§ 646.214(b)(3) and (4) establish requirements relating to such device. *See Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 352–53, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000). If a crossing pos-

sesses certain characteristics, § 646.214(b)(3) requires that automatic gates with flashing light signals be installed. If a crossing does not possess the characteristics identified in § 646.214(b)(3), § 646.214(b)(4) provides that the Federal Highway Administration ("FHWA") must approve the warning device that is installed. Where §§ 646.214(b)(3) and (4) apply, state tort law claims alleging that the type of warning device installed was inadequate are preempted. *Shanklin,* 529 U.S. at 353, 120 S.Ct. 1467; *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 671, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Such claims are barred "once the FHWA has funded the crossing improvement and the warning devices are actually installed and operating." *Shanklin,* 529 U.S. at 354, 120 S.Ct. 1467. Defendant argues that plaintiff's claim that it failed to install an adequate warning device, i.e., gates, at the County M crossing is preempted because federal funds paid for the lights at the crossing, and such lights were installed and operating. Plaintiff disputes these assertions. For the reasons stated below, both parties' motions for summary judgment will be denied.

### a. Use of Federal Funds

Defendant's evidence regarding the use of federal funds consists of an affidavit from Debra Haack, accompanied by records from the Wisconsin Department of Transportation, and an affidavit from Railroad Commissioner Rodney Kruenen, also accompanied by documents.[2] The records accompanying the Haack affidavit indicate that between 1980 and 1982 federal funds financed a construction project involving "crossing signals" at a Soo Line crossing

---

**2.** Plaintiff initially objected to my consideration of the Kruenen affidavit because defendant did not list him as a witness. However, plaintiff has since deposed Kruenen; thus, I will consider his submission.

on County Trunk Highway SS, now County M. (Haack Aff. Ex. A & B.) In his affidavit, Kruenen asserts that "[f]ederal funds participated in the installation of the flashing light signals with cantilevers present and operating at rail crossing No. 692232Y on December 10, 2001, at County Trunk Highway SS, later renamed County Highway M." (May 26, 2004 Baird Aff. Ex. B ¶ 4.)

However, plaintiff points out that in the early 1980s there were two railroad crossings on County M, and the Haack and Kruenen submissions do not make clear which one was the site of the federally funded lights. Kruenen asserts that federal funds paid for lights located at a crossing that he identifies by number and mile post. However, he does not explain how he came to know which crossing the federal funds were directed to. His affidavit suggests that he reviewed the documents attached to it but no document identifies the number and mile post of the crossing where federal funds were used, and it is implausible that Kruenen personally recollects such information. In sum, Kruenen's affidavit is conclusory and thus will not support granting defendant's motion. *See, e.g., Thomas v. Christ Hosp. & Med. Ctr.,* 328 F.3d 890, 894 (7th Cir.2003) (stating that conclusory assertions are insufficient to defeat a motion for summary judgment). Nevertheless, it is undisputed that the accident took place at a former Soo Line Crossing, and the documents re-

garding federal funding refer to the crossing by that name. Other documents refer to the other County M crossing as a "C.M. ST. P. & P. RR" crossing. (Anderson's Resp. Regarding Fed. Funds for Crossing at 2.) Thus, a reasonable jury could conclude that federal funds paid for the warning lights at the crossing where the accident occurred. Accordingly, plaintiff's motion must also be denied.

Assuming that federal funds paid for the warning lights, plaintiff argues that defendant has not shown that the lights paid for were those present at the time of the accident. However, plaintiff presents no evidence that since the early 1980s different lights were installed. Thus, his motion for summary judgment dismissing defendant's preemption defense on this ground will be denied.[3]

### b. Installed and Operating

As previously noted, in order to establish preemption, defendant must not only show that federal funds paid for the warning lights but that such lights were actually installed and operating. *Shanklin,* 529 U.S. at 354, 120 S.Ct. 1467; *Waymire v. Norfolk & W. Ry. Co.,* 218 F.3d 773, 776–77 (7th Cir.2000) (holding that §§ 646.214(b)(3) and (4) preempt state law adequacy of warning claims "when federal funds are used to install the warning devices and when those devices are installed and fully functioning"); *Kiemele v. Soo Line R.R. Co.,* 93 F.3d 472, 475–76 (8th

**3.** Plaintiff also argues that the lights present on the date of the collision may have been something less than those installed in the early 1980s. However, unless defendant removed the lights installed in the 1980s and replaced them with lights not paid for with federal funds, this fact would not matter. As stated in *Easterwood,* as soon as federal funds are used to install devices that meet the definition of a warning device in 23 C.F.R. § 646.204, any state law claim that the type of warning device installed is inadequate is preempted. 507 U.S. at 672, 113 S.Ct. 1732.

The definition of a warning device in § 646.204 includes "flashing warning lights." If federal funds paid for warning lights at the County M crossing, the fact that defendant may have subsequently removed some of the lights would not erase federal preemption of a state claim that the *type* of warning device installed was inadequate. Rather, plaintiff could only argue that by removing some of the lights, defendant failed to properly maintain the warning device, which, as discussed below, is a state law claim that §§ 646.214(b)(3) and (4) do not preempt.

Cir.1996) (stating that if warning device approved by FHWA was not operating at time of accident, plaintiff's state law claim is not preempted); *Michael v. Norfolk S. Ry. Co.*, 74 F.3d 271, 273 (11th Cir.1996) (holding that if, on remand to district court, court determines that defendant installed a warning device that did not meet the specifications of the warning device approved by the FHWA, plaintiff's state law tort claim is not preempted); *Thiele v. Norfolk & W. Ry. Co.*, 68 F.3d 179, 183 (7th Cir.1995) (holding that there is no preemption of state law adequacy of warning claims until the warning device is installed and fully operational).

■ Plaintiff argues, alternatively, that the lights were misaligned when installed and thus never fully operational, and that they were misaligned at the time of the accident because of insufficient maintenance. For purposes of preemption, the distinction between plaintiff's arguments is important. If the lights were misaligned when installed, plaintiff's claim that they were inadequate as a warning device is not preempted. The contrary is true if the lights were functional when installed but became misaligned due to improper maintenance. This is so because once a claim challenging the adequacy of a warning device is preempted, preemption is not erased because the device is not properly maintained. *See Stevenson v. Union Pac. R.R. Co.*, 110 F.Supp.2d 1086, 1097–98 (E.D.Ark.2000).[4] Defendant contends that the lights were not misaligned when installed and submits a document indicating that a federal inspector approved them after they were installed. (Jul. 13, 2004 Baird Aff. at 3 & Ex. B.) In the face of this evidence, no reasonable jury could reach a contrary conclusion; thus, defendant's mo-

tion for summary judgment on this issue will be granted.

## 2. Excessive Speed Claim

Defendant argues that the FRSA and 49 C.F.R. § 213.9(a) preempt plaintiff's claim that the accident was caused by the train's excessive speed. Section 213.9(a) limits the speed at which trains may travel over particular classes of track. The regulation identifies several classes of track and assigns to each class maximum speeds for passenger and freight trains. Tracks are classified based on their conformity to the track safety standards provided in 49 C.F.R. pt. 213. For example, for track to be classified as class three, it must meet all of pt. 213's requirements for class three track. Section 213.9(a) "cover[s] the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings." *Easterwood*, 507 U.S. at 675, 113 S.Ct. 1732. Thus, if a train is involved in an accident while traveling under the maximum speed prescribed by § 213.9(a), a state law claim based on excessive speed is preempted. However, in *Easterwood*, the Court did not address whether § 213.9(a) preempts a claim that a train was traveling too fast to avoid a "specific, individual hazard," 507 U.S. at 675 n. 15, 113 S.Ct. 1732, and other courts have held that the regulation does not preempt such a claim. *See, e.g., Macfarlane v. Canadian Pac. Ry. Co.*, 278 F.3d 54, 59 (2d Cir.2002); *Hightower v. Kan. City S. Ry. Co.*, 70 P.3d 835, 846–49 (Okla.2003). Plaintiff argues that his excessive speed claim is not preempted because defendant cannot establish the classification of the track at the County M crossing and, thus, cannot prove that the train was operating within the speed limit

---

4. However, plaintiff's claim that the lights were not properly maintained is not preempted. *See Kiemele*, 93 F.3d at 475–76 (recognizing that claim of failure to maintain warning device is not preempted); *Michael*, 74 F.3d at 273 (same). Defendant concedes that there is a triable issue of fact as to whether the lights were properly maintained.

prescribed by § 213.9(a), and because he alleges that defendant failed to slow the train to avoid a specific, individual hazard.

### a. Track Classification

Under § 213.9(a), at the time of the accident the maximum allowable speed for a freight train traveling over class three track was forty miles an hour. Defendant's train was traveling at 26.3 miles per hour. However, plaintiff argues that defendant cannot establish that the track at the County M crossing was class three track. Neither party explains how the Federal Railroad Administration ("FRA") track classification system works, but this information may be gleaned from the FRA's regulations, its explanation of track safety standards in the Federal Register and its publication "Track Safety Standards Compliance Manual." The FRA does not classify particular segments of track.[5] Rather, railroads identify desirable speeds for stretches of track and designate such speeds in their timetables and train orders. Once they do so, they must maintain the track so as to satisfy FRA standards for the class of track corresponding to that train speed or be subject to a penalty. Track Safety Standards, 63

Fed.Reg. at 33998. Further, if track does not satisfy the requirements for the class at which it is being operated, a FRA or state track inspector may lower its classification. 49 C.F.R. § 216.15(a). Additionally, if track does not comply with the requirements for the class at which it is being operated, a railroad must bring it into compliance, halt operations over the track or operate trains over the track under special conditions. *Id.* § 213.5(a). Under the first of these options, a railroad may repair the track or impose speed restrictions so as to effectively reclassify it. FRA, Track Safety Standards Compliance Manual 5.11—5.12 (2002) ("For class specific defects ... track owners ... have the option of reclassifying the track to a lower class to bring the track into compliance .... [O]ne of the remedial actions available to the carrier would be to place a speed restriction and reclassify the track to class 1 or 2.")

■ Thus, the classification of the track at the County M crossing at the time of the accident depended on the speed that defendant permitted its trains to operate at over such track as set forth in its timetables, general orders and speed restrictions.[6] Defendant submits the affidavit of

5. The FRA has rejected language in judicial opinions assigning it responsibility for track classification:

> Notwithstanding some of the language in *Easterwood* that a cursory reading may otherwise indicate, FRA has never assumed the task of setting train speed. Rather, the agency holds railroads responsible for minimizing the risk of derailment by properly maintaining track for the speed they set themselves. For example, if a freight train wants its freight trains to operate at 59 m.p.h. between two certain locations, it must maintain the tracks between those locations to Class 4 standards.

Track Safety Standards, 63 Fed Reg. at 33992, 33999 (June 22, 1998).

6. Plaintiff disputes that the speed that a railroad sets for its trains determines track classi-

fication for preemption purposes and argues that defendant must produce records of its internal track inspections showing that it maintained the track at the level appropriate for a particular class. However, as noted, if a railroad fails to maintain track so as to satisfy the requirements applicable to the class of track corresponding to the speed at which trains operate, the track classification is not changed unless either the federal or state track inspector issues an order lowering the classification or the railroad imposes a speed restriction that has the effect of lowering such classification. If a railroad fails to maintain track so as to meet the proper standards, it is subject to a penalty, *see* 49 C.F.R. § 213.15, but federal preemption is not lost unless the FRA track inspector downgrades a track. *See Stevenson,* 110 F.Supp.2d at 1092 ("Federal law provides ... that the decision to down-

Gregory J. Guthrie, who states that he was in charge of track speed issues for defendant, and that at the time of the accident the track at the County M crossing was class three track. However, Guthrie's affidavit borders on the conclusory because Guthrie offers little explanation as to how he arrived at his conclusion. It is implausible that he remembers the speeds of trains through the crossing and whether a speed restriction was in place on the date of the accident. Based on his assertions, it would be possible for a reasonable jury to conclude that the track in question was class three track, but a reasonable jury could also find the evidence insufficient to establish such proposition.

Guthrie's affidavit further states that the timetable speed at the County M crossing was thirty-five miles per hour. If no speed restrictions were in place at the time of the accident, a timetable speed of thirty-five miles per hour would correspond to class three track. To show that no speed restrictions were in place, defendant submits the affidavits of crew members Wayne Blatz and David Hilt, which state that no speed restrictions or slow orders were in place within two miles of the crossing. However, in their prior deposition testimony, Blatz and Hilt stated that they did not know whether any speed restrictions were in place within one mile of the crossing. (Pl.'s Ex. 36 [Blatz Dep.] at 43:7–18; Pl.'s Ex. 37 [Hilt Dep.] at 17:13–21, 20:22–25.) "When a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy'" *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir.1999) (internal citation and quotation marks omitted). The deposition questions put to Blatz and Hilt were not confusing. The colloquy with Blatz was as follows:

Q. Were there any speed restrictions within a mile of the accident site?

A. I don't recall.

(Blatz Dep. at 43:12–14.) And Hilt's deposition is similar.

Q. Okay. Do you recall if there were any speed restrictions in this case? I mean, on that day?

A. No, I don't recall. I don't remember.

(Hilt Dep. at 17:17–19.) Defendant suggests that Blatz's attention was less focused during his deposition than in his affidavit. However, I find this explanation unpersuasive and, accordingly, will not consider the Blatz and Hilt affidavits. Thus, because it is unclear whether speed restrictions were in effect at the time of the accident, the classification of the track at the County M crossing at such time is a triable issue of fact.

**b. Specific, Individual Hazard**

 Plaintiff claims that the train crew failed to slow or stop the train to avoid a specific, individual hazard. Specifically, he alleges that based on Kumlein's failed attempt to stop, the crew should have been alerted that there was a problem at the crossing. Neither the Supreme Court nor the Seventh Circuit has defined a specific individual hazard, and other courts have reached conflicting results. *Compare Bakhuyzen v. Nat'l R. Passenger Corp.*, 20 F.Supp.2d 1113, 1118 (W.D.Mich. 1996) (holding that severe weather conditions posed a specific, individual hazard),

grade a track belongs to the FRA track inspector"). In the present case, there is no evidence that the FRA track inspector downgraded the County M crossing track. Thus, the speed at which defendant allowed its trains to operate over the County M crossing determines the track's classification.

with *Seyler v. Burlington N. · Santa Fe Corp.*, 102 F.Supp.2d 1226, 1235–1238 (D.Kan.2000) (reaching the contrary conclusion). Generally speaking, however, a specific, individual hazard is a person, vehicle, obstruction, object or event which is not a fixed condition or feature of a crossing and cannot be addressed by a uniform, national standard. *See, e.g., Hightower*, 70 P.3d at 847. A specific individual hazard is a unique occurrence which could cause an accident to be imminent rather than a generally dangerous condition. *Id.* A commonly cited example is a child standing on a track. *See, e.g., Bashir v. Nat'l R.R. Passenger Corp.*, 929 F.Supp. 404, 412 (S.D.Fla.1996).[7] "Factors such as general

knowledge that a crossing is dangerous, traffic conditions, a crossing's accident history, sight distances, multiple crossings in close proximity, sun glare, a railroad's internal policies regarding speed, and inadequate signal maintenance are not specific, individual hazards." *Myers v. Mo. Pac. R.R. Co.*, 52 P.3d 1014, 1028 (Okla.2002).[8]

■ It is unclear whether, under Wisconsin law, the movements of the Kumlein vehicle imposed a duty on the crew to slow or stop the train. Defendant does not dispute plaintiff's assertion that such a duty was triggered but argues that plaintiff's claim that the crew violated it is preempted. If, however, the movements of the

---

7. Additionally, the following conditions have been found to constitute specific, individual hazards: a snowstorm creating poor visibility, *Bakhuyzen*, 20 F.Supp.2d at 1118; a car standing on a track, *Shaup v. Frederickson*, No. CIV. A.–97–7260, 1998 WL 726650, at *11 (E.D.Pa. Oct.16, 1998); terrain, obstructed sight lines and limited access together with repeated signal apparatus malfunctions at a crossing, *Stone v. CSX Transp., Inc.*, 37 F.Supp.2d 789, 795 (S.D.W.Va.1999); an "unwavering approach" of a vehicle to a crossing that the train crew either knew or should have known about, *Griffin v. Kan. City S. Ry. Co.*, 965 S.W.2d 458, 461 (Mo.App. 1998) and *Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 242 (Mo.2001); and illegally parked tank cars that obstructed the view of the crossing, *Mo. Pac. R.R. Co. v. Lemon*, 861 S.W.2d 501, 510 (Tex.App.1993).

8. The following conditions have been found not to constitute specific, individual hazards: multiple tracks and rail cars obstructing the crew's view, *Earwood v. Norfolk S. Co.*, 845 F.Supp. 880, 888 (N.D.Ga.1993); an ultrahazardous crossing caused by trucks transporting hazardous materials, heavy traffic and a previous accident, *Bowman v. Norfolk S. Ry. Co.*, 832 F.Supp. 1014, 1017 (D.S.C.1993); a dangerously designed crossing including inadequate warning devices, an obscured view due to the angle at which the track crossed the highway and a steep grade, *O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411, 1421 (W.D.Mo.1997); a high vehicular traffic area

lacking an automatic gate with flashing lights, *Armstrong v. Atchison, Topeka & Santa Fe Ry. Co.*, 844 F.Supp. 1152, 1152–53 (W.D.Tex. 1994); a snow covered crossing, *Cox v. Norfolk and W. Ry. Co.*, 998 F.Supp. 679, 685 (S.D.W.Va.1998); the presence of fog and a brick facility, *Williams v. Ala. Great S. R.R. Co.*, Civ. A. No. 93–2117, 1994 WL 419863, at *3 (E.D. La. Aug 8, 1994); general knowledge of a chronically dangerous condition such as disembarking passengers habitually crossing the tracks, *Beausoleil v. Nat'l R.R. Passenger Corp.*, 145 F.Supp.2d 119, 121 (D.Mass.2001); icy conditions which were not limited to the subject crossing but were prevalent throughout the area, *Stuckey v. Ill. Cent. R.R. Co.*, No. 2:96CV47–B–B, 1998 WL 97270, at *5 (N.D.Miss. Feb.10, 1998); heavy rainfall combined with weather service warnings of flash floods, *Seyler*, 102 F.Supp.2d at 1237; a crossing with an obstructed sight line, rough crossing, parallel roadways, inadequate warning devices, and inoperative ditch lights coupled with inclement weather, *Furlough v. Union Pac. R.R. Co.*, 766 So.2d 751, 760 (La. App.2000); a high traffic volume, grade/angle of the crossing and surrounding vegetation, *Steva v. Soo Line R.R. Co.*, No. 96–4198NI, 1997 WL 381854, at *1 (8th Cir. July 11, 1997); artificial lighting that obscured the train's headlight, *Herriman v. Conrail, Inc.*, 883 F.Supp. 303, 307 (N.D.Ind.1995); a train's violation of its railroad's internal speed regulation, *Hightower*, 70 P.3d at 848–49; and ultrahazardous conditions of which the railroad was aware, *Myers*, 52 P.3d at 1028.

Kumlein vehicle should have alerted the crew that something was wrong, as for example, that motorists could not see the warning lights, and created a duty to slow or stop the train, such duty would be a duty to avoid a specific, individual hazard. This is so because the duty would be one to avoid a specific collision, like the duty to slow or stop to avoid a child on the track. The movements of the Kumlein vehicle were not part of the general conditions at the crossing and could not have been addressed by a uniform, national standard. Thus, defendant fails to establish that plaintiff's claim that the crew breached a duty created by the movements of the Kumlein vehicle to slow or stop the train is preempted, and plaintiff's motion seeking dismissal of defendant's preemption defense will be granted.

### 3. Vegetation, Sun Glare and Ultrahazardous Conditions Claims

■ Defendant argues that plaintiff's claims relating to vegetation, sun glare and other "ultrahazardous allegations attributed to the County Highway M crossing" are preempted. (*See* May 26, 2004 Br. in Supp. of Def.'s Mot. for Summ. J. at 3.) Defendant does not specifically identify which claims it refers to, but likely has in mind plaintiff's allegation that it:

> [f]ail[ed] to keep its right-of-way clear of brush or trees for a distance of not less than 330 feet in each direction from the center of the Highway M Crossing at the grade of County Highway M or such further distance as was necessary to provide an adequate view of the approaching train by Anderson or other motorists on County Highway M

(Compl. ¶ 9.J.) [9] Defendant argues that the claim is preempted by 49 C.F.R. § 213.37 and § 213.9(a). Section 213.37 requires a railroad to control vegetation on its property "on or immediately adjacent to roadbed," [10] and preempts state law claims alleging vegetation on railroad property on or immediately adjacent to roadbed. [11]

> Vegetation on railroad property which is on or immediately adjacent to roadbed shall be controlled so that it does not—
> (a) Become a fire hazard to track-carrying structures;
> (b) Obstruct visibility of railroad signs and signals:
> (1) Along the right-of-way, and
> (2) At highway-rail crossings; (This paragraph (b)(2) is applicable September 21, 1999.)
> (c) Interfere with railroad employees performing normal trackside duties;
> (d) Prevent proper functioning of signal and communication lines; or
> (e) Prevent railroad employees from visually inspecting moving equipment from their normal duty stations.

**9.** Several of plaintiff's other claims use the terms "vegetation," "sun glare" and "ultrahazardous," but these claims are either more appropriately classified as claims regarding the adequacy of the warning device or are claims that defendant does not address. Paragraphs 9.K and Q (erroneously designated "P") deal with the adequacy of the warning device given the ultrahazardous nature of the crossing. Paragraph 9.L refers to defendant's failure to comply with the orders and requirements of regulatory authorities with respect to ownership, maintenance and use of the County M crossing as an ultrahazardous crossing, but defendant makes no argument with respect to this claim. Paragraph 9.M refers to defendant's failure to report the ultrahazardous condition of the County M crossing, but again, defendant makes no argument directed at this claim. Finally, defendant does not argue against the claim contained in paragraph 9.N, which refers to defendant's failure to investigate the ultrahazardous nature of the County M crossing. Thus, I will not address the claims contained in paragraphs 9.L, 9.M or 9.N.

**10.** The full text of § 213.37 is as follows:

**11.** "Roadbed" is not defined in the regulations but the term commonly refers to the area under and adjacent to the tracks. *See Missouri Pac. R.R. Co. v. R.R. Comm'n of Tex.,* 653 F.Supp. 617, 624 (W.D.Tex.1987), *rev'd on other grounds by, Missouri Pac. R.R. Co. v. R.R. Comm'n of Tex.,* 833 F.2d 570 (5th Cir. 1987).

*See, e.g., Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1554 (11th Cir.1991), *aff'd,* 507 U.S. at 676, 113 S.Ct. 1732, 123 L.Ed.2d 387; *Mo. Pac. R.R. Co.,* 833 F.2d at 577; *Nat'l R.R. Passenger Corp. v. H & P, Inc.,* 949 F.Supp. 1556, 1564 (M.D.Ala. 1996); *Ala. Great S. R.R. Co.v. Lee,* 826 So.2d 1232, 1239 (Miss.2002). The area immediately adjacent to roadbed extends no further than ten or fifteen feet from it. *Hadley v. Union Pac. R.R. Co.,* No. Civ. A. 02–1901, 2003 WL 21406183, at *2 (E.D.La. June 17, 2003). However, plaintiff claims that defendant was negligent by failing to trim vegetation up to 330 feet from roadbed. Thus, § 213.37 does not preempt plaintiff's claim.

Defendant also argues that based on *Gleason v. Soo Line R.R. Co.,* No. C98–2021 MJM, 1999 WL 33656833, at *3–*4 (N.D.Iowa Jan.12, 1999), and *O'Bannon,* 960 F.Supp. at 1422–23, § 213.9(a), which governs track speed, preempts plaintiff's vegetation claim. In *Gleason* and *O'Bannon,* the plaintiffs brought actions against railroads claiming that because of vegetation, trains moving at speeds permitted by § 213.9(a) could not see oncoming traffic in time to avoid collisions. The courts reasoned that the FRA sets maximum train speeds under § 213.9(a) "only after assessing the track conditions—including obstructions to visibility," i.e., vegetation and thus concluded that § 213.9(a) preempted plaintiffs' state law vegetation claims. *Gleason,* 1999 WL 33656833, at *3 (quoting *O'Bannon,* 960 F.Supp. at 1423).

I disagree with the reasoning of *Gleason* and *O'Bannon* and decline to follow those cases. The purpose of § 213.9(a) is to create uniform standards governing train speed; thus, the regulation preempts state-imposed restrictions on train speed.

Track Safety Standards, 63 Fed.Reg. at 33999. Accordingly, § 213.9(a) preempts state laws requiring trains to slow down at crossings because of vegetation overgrowth. However, it does not preempt state laws requiring railroads to cut vegetation at crossings because such laws do not regulate train speed. In the present case, plaintiff's claim is that defendant was negligent by failing to comply with a state law requiring railroads to cut vegetation. *See* Wis. Stat. § 195.29(6). Such claim is not preempted by § 213.9(a).

Thus, to the extent that plaintiff alleges that defendant failed to cut vegetation on its right of way on property not on or immediately adjacent to roadbed, such claim is not preempted, and plaintiff's motion for partial summary judgment dismissing defendant's preemption defense to such claim will be granted.[12]

### 4. Failure to Sound Warning Claim

■ Defendant also argues that plaintiff's negligence claim based on its "[f]ail[ure] to sound a bell, whistle, horn or other warning device in a sufficient manner so as to enable Anderson to hear it before the Collision" is preempted. (Compl.¶ 9.D.) A state law claim alleging that a train's horn is inadequate is preempted, but a claim alleging that a train crew failed to properly sound a horn is not. *Strandberg,* 284 F.Supp.2d at 1143–44 (holding that a claim that a train's whistle and headlight were inadequate was preempted but not one that a crew failed to sound a whistle or illuminate a headlight). Thus, plaintiff's motion to dismiss defendant's preemption defense to this claim will be granted.

**12.** Defendant does not argue that 23 C.F.R. §§ 646.214(b)(3) and (4), which, as discussed, deal with warning devices, preempt plaintiff's vegetation claim. However, at least two circuits have rejected this argument. *See Shanklin v. Norfolk S. Ry. Co.,* 369 F.3d 978, 988 (6th Cir.2004); *Strozyk v. Norfolk S. Corp.,* 358 F.3d 268, 273–77 (3d Cir.2004).

## B. State Law Preemption

Defendant argues that plaintiff's challenge to the adequacy of the warning signals is barred by Wis. Stat. § 195.28(1), which provides that "[a]ny crossing protection installed or maintained as approved by [the office of the commissioner of railroads], whether by order or otherwise, shall be deemed adequate and appropriate protection for the crossing."[13] Section 195.28(1) authorizes the commissioner's office to determine whether a warning device at a crossing is adequate to protect public safety. Once a petition is filed, the office may investigate and issue an appropriate order. *Id.* A device "installed or maintained" as approved by the office "shall be deemed adequate and appropriate protection for the crossing." *Id.* If a warning device is installed pursuant to an order issued under § 195.28(1), a railroad cannot be found negligent for failing to install a different type of warning device. *See Kurz v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 53 Wis.2d 12, 20–23, 192 N.W.2d 97 (1971); *Verrette v. Chi. & N.W. Ry. Co.*, 40 Wis.2d 20, 25–29, 161 N.W.2d 264 (1968); *Schulz v. Chi., M., St. P & P. Ry. Co.*, 260 Wis. 541, 545, 51 N.W.2d 542 (1952).

■■■■ In 1979, the office ordered the Soo Line to "install and maintain automatic flashing-light signals with cantilevers and appropriate appurtenances" at the County M crossing. (Jul. 14, 2004 Baird Aff. Ex. A at 0074.)[14] Plaintiff argues that because there is a factual issue as to whether at the time of the accident the

lights were properly aligned, there is also a factual issue as to whether defendant "maintain[ed]" them pursuant to the commissioner's order and, if defendant failed to do so, plaintiff's challenge to their adequacy is not barred by § 195.28(1). I agree. Under Wisconsin law, "if the commission has directed a crossing to be guarded in a particular manner *and the railroad has done as directed,* it is not required to go further to satisfy a jury's idea of adequate protection." *Schulz,* 260 Wis. at 545, 51 N.W.2d 542 (emphasis added). In the present case, there is a genuine issue of fact as to whether the railroad did as directed, i.e., "install and *maintain*" the lights (emphasis added). Thus, defendant's motion for summary judgment on the question of whether § 195.28 bars plaintiff's challenge to the adequacy of the lights will be denied.

## C. Plaintiff's Chapter 195 Claim

■■■■ Plaintiff alleges that defendant "willfully, wantonly or recklessly" violated various provisions of Chapter 195 and, pursuant to Wis. Stat. § 195.35(1), seeks to recover treble damages for such violations. Defendant moves for summary judgment on plaintiff's Chapter 195 claims based on Kruenen's assertion that his office "found no willful, wanton or reckless conduct on the part of Wisconsin Central." (May 26, 2004 Baird Aff. Ex. B ¶ 6.) However, Kruenen's statement is not dispositive in the present lawsuit. Under § 195.35(1), a person injured as the result of a railroad's intentional violation of Chapter 195 may

**13.** Plaintiff argues that defendant waived this defense by failing to raise it in its answer. *See* Fed.R.Civ.P. 8(c); *Castro v. Chicago Hous. Auth.,* 360 F.3d 721, 735 (7th Cir.2004); *Perry v. Sullivan,* 207 F.3d 379, 382 (7th Cir.2000); *Venters v. City of Delphi,* 123 F.3d 956, 969 (7th Cir.1997). However, plaintiff has since deposed Kruenen on whose testimony defendant's argument is based and has had an opportunity to respond to the merits of the

issue. Thus, I will reject his waiver argument and consider the issue on the merits.

**14.** On November 7, 2000, the office vacated the order and ordered the railroad to install automatic gates. (Sept. 29, 2003 Kerkman Aff. Ex. C at 82–85.) However, the November 7, 2000 order did not require gates to be installed until December 31, 2001, (*id.*), after the December 10, 2001 accident.

bring an action against the railroad separate from any action that the commissioner's office might initiate. Wis. Stat. § 195.35(1) ("No recovery as in this section provided shall affect a recovery by the state of the penalty prescribed for such violation.") Defendant cites no authority indicating that a commissioner's office "finding" eliminates the right of a private plaintiff to sue the railroad or precludes such plaintiff from disputing the finding. Further, it is unclear exactly what the commissioner's office found and what the basis for the finding was. Defendant presents no evidence that the commissioner's office conducted an investigation or, if so, what it involved. Thus, defendant's motion for summary judgment on plaintiff's Chapter 195 claims will be denied.

## D. Contributory Negligence

Defendant also asserts that by failing to avoid the accident, plaintiff was negligent as a matter of law.[15] The Wisconsin Civil Jury Instructions provide: [16]

[a] driver upon a highway, approaching a grade crossing, has a duty to exercise ordinary care for his or her own safety. In order to perform this duty, a driver must not only look in both directions to determine whether a train is approaching but must listen as well. If by reason of any obstruction to his or her view as the driver approaches the tracks the driver is then unable to make an efficient observation, the driver must slow down or stop the vehicle, if necessary, before entering upon the crossing in order to use his or her sense of hearing and vision effectively.

**15.** Even if plaintiff was negligent as a matter of law, the question of whether his negligence contributed to the collision would remain.

**16.** Although the jury instructions are not binding on me, they are persuasive authority.

Wis. Jl—Civil § 1336 (1992). The instructions also prohibit a driver from proceeding through a railroad crossing while a warning device signals to stop. *Id.* § 1337. Finally, the instructions state that

[a] driver who intends to cross a railroad track may not rely on the nonoperation of a safety device (absence of the usual flagman) as an absolute assurance of safety and may not proceed without regard to his or her own safety; the driver must still exercise ordinary care for his or her own protection. However, the presence or absence of warning guards and the proper functioning or nonfunctioning of guards or signals are circumstances to be considered in determining whether or not the driver exercised ordinary care.

*Id.* § 1338.

Plaintiff argues that some of the duties outlined in the jury instructions are based on outdated cases and inapplicable to modern conditions. *See, e.g., Bembinster v. Aero Auto Parts,* 12 Wis.2d 252, 256–57, 108 N.W.2d 115 (1961) (outlining duties imposed on driver approaching a railroad crossing). However, the instructions were reviewed in 1989 and not modified. Plaintiff argues that requiring a driver whose view is obstructed to slow or stop at a crossing to make an efficient observation would cause rear-end collisions. However, motorists should expect that drivers might slow or stop at a crossing. Further, an accident involving a train and a car would likely be more harmful than a rear-end collision. In any case, the jury instructions accurately reflect motorists' duties under Wisconsin law.

*See, e.g., State v. Olson,* 175 Wis.2d 628, 643 n. 10, 498 N.W.2d 661 (1993). Except where noted, the parties agree that the jury instructions accurately reflect the duties imposed by Wisconsin law on a driver approaching a railroad crossing.

Defendant argues that plaintiff was negligent by failing to look in both directions, by failing to listen, by failing to slow or stop his truck to make an efficient observation, and by failing to stop at the crossing when the warning signals were operating. Plaintiff stated in his deposition that he did not look in both directions but presents an affidavit stating that although he did not turn his head, his eyes "glanced around [his] field of view as [he] was looking straight ahead." (June 8, 2004 Kerkman Aff. Ex. 27 ¶ 2.) Plaintiff's affidavit can reasonably be read as clarifying rather than contradicting his deposition testimony. *See, e.g., Piscione,* 171 F.3d at 532–33. Thus, a reasonable jury could conclude that plaintiff satisfied his duty to look in both directions, and defendant's motion for partial summary judgment on this issue will be denied.

Defendant also argues, based on the following deposition testimony, that plaintiff failed to satisfy his duty to listen:

Q. Okay. As you get close to the crossing, is it your habit to try to listen for trains?

A. No, not necessarily listen, but, you know, kind of keep your eyes open.

Q. Do you feel that there is any real obligation for you to listen to the train, you know, when you come up to a crossing like that or not really?

A. Oh, I don't know. I think—I don't know, usually kind of, I watch for other warnings first rather than sound, you know. I'd be looking for the lights rather than—you know, because if I don't see any lights flashing, I'm not going to be listening for the train.

Q. So typically, you're not necessarily listening as—or strike that. As you proceeded through the crossing on this day, as far as you recall, you weren't specifically listening for a train?

A. No.

(May 26, 2004 Baird Aff. Ex. A at 60.) However, such testimony does not conclusively establish that plaintiff failed to pay attention to whether a train was coming. The question posed to plaintiff was what he recalled. Plaintiff's expert witness, Ellie Francis, states that a person who has experienced a traumatic accident may not accurately recall its details. Thus, based on plaintiff's deposition testimony, a reasonable jury would not be compelled to infer that plaintiff failed to listen. Further, because defendant has the burden of proving that plaintiff was contributorily negligent, *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis.2d 94, 121, 362 N.W.2d 118 (1985), plaintiff is not obliged to produce evidence that he did, in fact, satisfy his duty to listen. Thus, drawing all reasonable inferences in plaintiff's favor, defendant's motion for summary judgment on the issue will be denied.

Defendant also argues that plaintiff failed to slow or stop in order to make an efficient observation. If plaintiff's view was obstructed, he was obliged to slow or stop. However, it is unclear from the record whether his view was obstructed. It is also unclear whether he failed to slow down. Plaintiff testified on this point as follows:

Q. Okay. I take it you didn't slow down at all or even take your foot off the gas before you hit [the train]?

A. Well, I couldn't say whether or not I took my foot off the gas. It was typical for me to let my foot off the gas to kind of coast over the railroad tracks because they're pretty rough. It's a pretty rough crossing right there, but I couldn't say whether or not I had at this specific time or not.

Q. So while you might have let off because of it being a rough track, you

don't remember slowing down at all before the impact?

A. No.

(*Id.* at 62, 362 N.W.2d 118.) Again, the question posed to plaintiff was whether he *recalled* slowing down, and a reasonable jury would not be compelled to infer from plaintiff's negative response that he did not, in fact, slow down. Accordingly, because a reasonable jury could conclude that defendant failed to carry its burden to prove that plaintiff did not slow down, defendant's motion on the issue will be denied.

Finally, defendant argues that plaintiff failed to satisfy his duty to stop at the warning lights. Plaintiff responds that the lights were not functioning properly, and, as a result, he could not tell if they were operating. As previously noted, there is a factual issue as to whether the lights were properly aligned, and, therefore, the question of whether plaintiff could have seen them is also one of fact. Thus, defendant's motion for summary judgment on this issue must be denied.

### E. Plaintiff's Motions Based on Defendant's Negligence

#### 1. Failure to Trim Vegetation

■■■■■ Plaintiff argues that defendant was negligent per se by failing to cut the

brush on its right-of-way located farther than ten to fifteen feet from roadbed. A railroad's failure to cut vegetation within 330 feet in each direction from the center of a crossing is negligence per se. *See* Wis. Stat. § 195.29(6); Wis. Jl—Civil § 1411 (1989). Defendant does not dispute that it failed to cut brush in the above area but argues that such failure did not cause the collision. Thus, I will grant plaintiff's motion for summary judgment on the issue of defendant's negligence, but the question of causation must be decided by the jury.[17]

#### 2. Failure to Sound Proper Warning

■■■■■ Plaintiff argues that defendant was negligent in failing to properly sound the train's horn as it approached the County M crossing. Plaintiff claims that defendant failed to sound the horn until the train was closer than 1,320 feet of the crossing, failed to sound the horn in the proper pattern, and failed to sound an emergency signal. It is negligence per se for a train crew to fail to sound a horn when a train is 1,320 feet (or a quarter mile) from a crossing located outside of a municipality. Wis. Stat. § 192.29(4); Wis. Jl—Civil § 1402 (1989). The County M crossing is outside of a municipality, and plaintiff presents expert testimony that the horn was not sounded until the train was 1,242.4 feet from the crossing. (Kerkman

---

17. Defendant argues that before I can conclude that it violated § 195.29(6), plaintiff must show that by failing to cut vegetation, defendant deprived him of an adequate view of the train. However, the statute provides: [e]very railroad shall keep its right-of-way clear of brush or trees for a distance of not less than 330 feet in each direction from the center of its intersection at grade with any public highway, *and for such further distance as is necessary to provide an adequate view of approaching trains, from the highway.* Wis. Stat. § 195.29(6) (emphasis added). Thus, the statute's plain language uncondi-

tionally requires a railroad to keep its right of way clear of vegetation for at least 330 feet. Only when a plaintiff alleges that a railroad is negligent for failing to cut vegetation at a distance greater than 330 feet from a crossing does the question of an adequate view arise. In the present case, the question of whether defendant deprived plaintiff of an adequate view is relevant to the issue of whether defendant's failure to cut vegetation caused the accident, an issue on which plaintiff has not moved for summary judgment and on which I express no view.

Aff. Ex. 18, at 1155.) However, defendant presents evidence that the horn began sounding at the "whistle post," which is a quarter mile from the crossing. (*See* Blatz Dep. at 55; Baird Aff. Ex. B.) Thus, the question of whether the train's horn was timely sounded is disputed, and plaintiff's summary judgment motion must be denied.

Plaintiff also argues that defendant was required to sound its horn in a pattern of two long bursts, a short burst, and then a final long burst but did not do so. Defendant does not contest that it had a duty to sound its horn in such manner but presents evidence that it did so. (May 26, 2004 Baird Aff. Ex. H at 55.) Thus, because the facts are in dispute, plaintiff's motion for summary judgment on the issue will be denied.

Plaintiff also argues that at a certain point the train crew knew or should have known that the County M crossing presented a potentially dangerous situation and, thus, was required to but did not sound the train's horn in an emergency pattern. Defendant disputes that a train must use an emergency horn pattern in a potentially dangerous situation.[18] In any case, there is a factual issue as to whether the crew knew or should have known that the crossing was potentially dangerous. Plaintiff's expert states that defendant's crew saw or should have seen two vehicles enter the crossing after the warning lights were activated and, thus, been aware that the situation was potentially dangerous. (May 25, 2004 Kerkman Aff. Ex. 15, at 1054.) However, one of the crew members testified that no cars were observed entering the crossing, and that the crossing was not dangerous. (May 26, 2004 Baird Aff. Ex. H, at 55–56; *id.* Ex. I, at 35–38.) Thus, because the facts are disputed, the motion will be denied.

## IV. CONCLUSION

For the foregoing reasons, the parties' cross-motions for partial summary judgment are granted in part and denied in part as follows: plaintiff's vegetation claim involving vegetation on or immediately adjacent to the roadbed is preempted; plaintiff's claim that defendant had a duty to slow or stop the train upon witnessing a vehicle cross the tracks is not preempted; plaintiff's vegetation claim is not preempted except as it relates to vegetation on or immediately adjacent to roadbed; and plaintiff's claim that defendant failed to sound a warning is not preempted. Finally, defendant was negligent for failing to cut the brush on its right-of-way not on or immediately adjacent to roadbed.

In all other respects, the parties' cross motions are denied.

**THEREFORE, IT IS ORDERED** that defendant's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART** as described above.

**IT IS FURTHER ORDERED** that defendant XYZ Insurance Company is **DISMISSED AS A PARTY**.

---

18. It is undisputed that the crew did not sound the horn in an emergency horn pattern.