RENDELL, Circuit Judge,
dissenting.
I dissent from the majority’s opinion because I believe its analysis veers from Supreme Court precedent in the area of FRSA preemption. When the Mall commenced this action in District Court complaining of CSX’s failure to maintain its stormwater drainage, it urged that, applying the “coverage” test for preemption that the Supreme Court established in CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), its claims were clearly covered by 49 C.F.R. § 213.33. Section 213.33 provides:
Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned.
The Mall contended that, although the regulation covered the subject matter of its state law claims, the claims were not preempted because the Clarifying Amendment applied.[1] That Amendment provides that FRSA does not preempt claims for damages if they allege a violation of a “[fjederal standard of care” or the railroad’s “own plan, rule, or standard that it created pursuant to a regulation or order.” 49 U.S.C. § 20106(b)(1)(A)-(B).
The District Court agreed with the Mall that § 213.33 covered the subject matter of the Mall’s state law claims, but held that the Clarifying Amendment did not apply because the Mall requested only injunctive relief — not damages. Dissatisfied with this result, the Mall now comes to our Court with a new approach for gaining an injunction. It now contends that § 213.33 does “not even relate to, let alone cover, a railroad’s discharge of stormwater onto an adjoining property.” (Appellant’s Opening Br. at 11.) In other words, it argues the direct opposite of what it pleaded and consistently urged below.
In furtherance of this epiphany, the Mall urges that CSX’s stormwater is not really a drainage issue that § 213.33 regulates. Rather, it contends that the stormwater should be viewed as “flow” or “runoff” onto an adjoining property. The majority has embraced this argument. I conclude, however, that the Mall was right the first time: § 213.33 clearly covers the subject matter of its claims, and under Easter-wood, that is the only issue that matters. In Easterwood, the Supreme Court framed the critical preemption FRSA inquiry: does the regulation at issue “substantially subsume the subject matter of the relevant state law[?]” 507 U.S. at 664, 113 S.Ct. 1732. Here, it does. The Mall’s position on appeal ignores Easterwood’s command, and is flawed from a physical, analytical, and practical standpoint.
First, an examination of the physical layout of the area reveals that the hillside leading to the Mali’s property — the site of the alleged negligence — is immediately adjacent to the roadbed.[2] A picture tells a *498 thousand words, and the photo attached to this opinion demonstrates the requisite proximity.[3] Can there be any doubt that the regulation “covers” the drainage in this area? I think not.
Second, analytically, the Mall’s own characterization of CSX’s misconduct belies its assertion that § 213.33 does not cover CSX’s conduct. The Mall repeatedly and consistently articulates CSX’s conduct as its failure to manage the storm water on its property[4] — exactly what § 213.33 requires CSX to do. According to the Mall and the majority, however, the fact that § 213.33 addresses the very conduct that the Mall contests does not matter in evaluating whether the regulation covers the subject matter of the Mali’s claims. Rather, they contend that what matters is the result — here, runoff onto the Mali’s property. This position is captured in the Mall’s Complaint: the continuing trespass claim is the result of CSX’s “failing to properly control its stormwater and maintain the CSX Property so that its storm-water does not overflow onto MacDade’s property.” (A. 123 (Compl.f 30).) But, the “flow” or “runoff’ onto the Mall’s property is not the negligent act complained of, it is the result. If we were to adopt the majority’s position, we would be holding that even if FRSA clearly covers the conduct of a railroad, such that the matter is preempted under Easterwood, a claimant could, nonetheless, assert a claim for any resulting or consequential injury that flows from the covered conduct. This position renders preemption toothless and cannot withstand analytic scrutiny. Simply put, that CSX’s failure to comply with § 213.33 leads to a result that harms another is not a basis to ignore the preemptive effect of the regulation and permit a claim to be brought for that harm.[5]
The Mall and the majority arrive at this conclusion by focusing on what they believe to be the intent of the regulation. The majority reasons: “There is no indication whatsoever that it was intended to address storm water discharge onto a neighboring property, which is the harm alleged by MD Mall.” See Majority Op. at 492 (emphasis added). However, this approach is directly contrary to the Supreme *499 Court’s unequivocal instruction in Easter-wood. There, the Supreme Court stated that in determining the preemptive effect of a regulation, the only question is whether the regulation covers the subject matter. 507 U.S. at 664, 113 S.Ct. 1732. The Supreme Court explicitly stated that the intent of the regulation was not to be considered: “Section 434[6] does not, however, call for an inquiry into the Secretary’s purposes, but instead directs the courts to determine whether regulations have been adopted that in fact cover the subject matter of train speed.” Id. at 675, 113 S.Ct. 1732. Here, if we substituted “storm water drainage adjacent to the roadbed” for “train speed”, it is clear that the necessary “coverage” exists. The Secretary has adopted a regulation that explicitly addresses “drainage ... immediately adjacent to the roadbed,” and the Mall is claiming that under state law, CSX is negligent in how it handles its stormwa-ter adjacent to the roadbed. If we divert our attention from the “coverage” of this regulation — of which there can be no doubt here — we disregard the preemption analysis required under Easterwood.[7]
The sparse case law discussing § 213.33 is consistent with this reasoning. For example, in Rooney v. City of Philadelphia, property owners brought suit against AMTRAK alleging that runoff and drainage problems resulted in flooding that “caus[ed] extensive damages to Plaintiffs’ properties and businesses.” 623 F.Supp.2d 644, 648 (E.D.Pa.2009). The court concluded that FRSA regulations, including 49 C.F.R. § 213.33, governed, among other things, “[djrainage requirements”, and as a result, “cover[ed] the subject matter at issue.” Id. at 666. In Black v. Baltimore & Ohio Railroad Co., plaintiffs initiated suit against the railroad alleging that “pumping actions in low joints, lack of good crossties, ballast and poor drainage” created muddy conditions that were hazardous to trainmen. 398 N.E.2d 1361, 1362 (Ind.Ct.App.1980). The court held that although there was no “specific regulation dealing with muddy conditions,” plaintiffs claims were preempted because FRSA regulations, in- *500 eluding 49 C.F.R. § 213.33, covered the “conditions that are alleged to have contributed to the” muddy conditions. Id. at 1363. Recently, in Miller v. SEPTA, the court, citing the clear mandate of Easter-wood, went so far as to conclude that a plaintiffs claim was preempted under § 213.33 where the railroad’s poorly maintained railroad bridge obstructed the flow of a stream and caused the stream to flood the plaintiffs property. No. 1876 C.D. 2011, 2013 WL 830715 (Pa.Commw.Ct. Mar. 7, 2013). Here, we have a much clearer case of “coverage.” The Mall’s claims arise directly from an alleged drainage problem that is immediately adjacent to the tracks.[8]
Further, the Mall’s and the majority’s position that a court may dictate how a railroad handles its stormwater drainage runs afoul of FRSA’s statutory scheme. FRSA states that the Secretary of Transportation has the “exclusive authority” to “request an injunction for a violation of a railroad safety regulation.” 49 U.S.C. § 20111(a)(2). The scope of the work to be done to remedy the condition at the CSX roadbed, berm, and adjacent hillside is the concern of the Secretary. The proposition that a court should refrain from involving itself in that subject matter is what preemption is all about. The consistency, uniformity, and safety concerns, that underlie these types of regulations should not be minimized or ignored.
Finally, from a practical perspective, there is no reason to gut our preemption analysis to provide the Mall with a remedy. To the extent the Mall is actually harmed, the Mall could proceed under the Clarifying Amendment with a request for damages for any property damage that it suffers — as it did originally before limiting itself to injunctive relief. The Mall could also bring the matter to the attention of the Secretary of Transportation, requesting that he issue an injunction that compels CSX to comply with § 213.33.
For the foregoing reasons I believe that the Mall’s position, which the majority adopts, is flawed. The most important reason, however, is that it runs afoul of Easterwood’s holding that the key question is whether the regulations “substantially subsume the subject matter” of the relevant state law. Here, § 213.33 does just that. Easterwood is very clear, but the majority’s holding turns preemption on its head and will bring about needless confusion in our jurisprudence as to the proper preemption analysis. I, therefore, respectfully dissent.
*501 [[Image here]]

. "Roadbed” refers to “the area under and adjacent to the tracks.” Anderson v. Wis. *498 Cent. Transp. Co., 327 F.Supp.2d 969, 979 n. 11 (E.D.Wis.2004); accord Mo. Pac. R.R. v. R.R. Comm’n of Tex., 948 F.2d 179, 182 (5th Cir.1991). “Immediately adjacent” is ten to fifteen feet. Anderson, 327 F.Supp.2d at 980; Hadley v. Union Pacific R. Co., No. Civ.A. 02-1901, 2003 WL 21406183, at *2 (E.D.La. June 16, 2003).

. Ditch lines abut and run parallel to the roadbed. When it rains, water flows from the roadbed into the ditches. The Mall contends that the drainage problem is the result of CSX’s failure to maintain the ditch that borders the Mall’s property. (A. 119 (Compl.HK 10-11).) Although the parties do not provide the dimensions of the area, it is clear that the ditch line is immediately adjacent to the roadbed.

. See Am. Compl. at A. 117, A. 121, A. 123; MD Mall’s Mem. of Law in Supp. of MD Mali's Motion for Summ. J. at S.A. 71, S.A. 82, S.A. 90 ("CSX is clearly not accommodating the expected water flow from its property, as required under Section 213.33.”), S.A. 91 ("CSX has failed to properly control its water run-off from illegally discharging on to [sic] the Mall Property.”); MD Mall's Response in Opp. to CSX’s Motion for Summ. J. at S.A. 93-94 ("CSX should be managing its stormwater so that it drains without causing damage to the Mall property.”), S.A. 99; Appellant's Br. at 14, 29 ("[T]he stormwater problem arose on [CSX’s] property and it controls its property.”); Appellant’s Reply Br. at 26.

.If this were not the case, the Clarifying Amendment’s allowance of claims for resulting harm would have been unnecessary. The Clarifying Amendment applies to claims for damages for actual harm, and the District Court correctly held that injunctive relief is not allowed. That is the province of the Secretary of Transportation, as I note below.

. Referring to FRSA’s preemption provision.

. The majority's reading of the analysis in Easterwood as concerned with the harm that the regulation was intended to prevent, see Majority Op. at 492-93 n. 11, is incorrect. Easterwood involved an inquiry into whether a very specific regulation — ^setting train speed caps — should be read expansively to cover, i.e. subsume, the subject matter of train speed safety. The Supreme Court was determining the scope of the regulation — not, as the majority posits, "the harm sought to be avoided by the relevant regulation.” Majority Op. at 492 n. 11. These are different inquiries. The Supreme Court adopted an expansive view of the scope of the regulation, based on an examination of what was considered in adopting the regulation — overall safety, not merely speed caps. 507 U.S. at 674-75, 113 S.Ct. 1732. Interestingly, however, the majority seems to agree with my view that once the Supreme Court in Easterwood concluded that the scope of the regulation was train speed safety, it held that it did not need to delve into the harms that the regulations were intended to avoid, namely derailments. See Majority Op. at 492-93 n. 11. The nature of the harm is, therefore, irrelevant in determining "coverage.” . That leads inexorably to the conclusion that, here, once we have concluded that the scope of the regulation covers the proper management of stormwater drainage adjacent to the roadbed — which is what the Mall contends is the cause of its problem — we should not consider the assertion that the regulation was aimed at the integrity of the tracks, not runoff. Had Easterwood been decided along the lines that the Mall and the majority urge, the Court would have concluded that because the speed cap was aimed at preventing derailments, not collisions with automobiles at grade crossings, the claim would not be preempted. As we know, that reasoning was not only not adopted by the Supreme Court— it was explicitly rejected.

. The majority does not cite one case that addresses § 213.33. In discussing whether the regulation “covers” the subject matter of the Mall’s claims, the majority cites cases where the regulation "merely touched upon” the subject matter of a plaintiff’s claims or cases that did not reach the issue in the fact pattern before this court. The majority relies heavily on Emerson v. Kansas City Southern Railway Company, 503 F.3d 1126 (10th Cir.2007). That case is inapposite. There, the Tenth Circuit Court of Appeals addressed ICCTA preemption — not FRSA preemption — and analyzed whether the “regulation of rail transportation” covered the railroad’s discarding old railroad ties into a drainage ditch. The issue of coverage is much clearer here, as § 213.33 actually regulates drainage.